THE VILLAGE OF PRINCEVILLE

v.

PETER AUTEN et al.

1. DEDICATION—*of public square in a village.*  Where the proprietors of land, in laying out and platting a village thereon, left a square blank, without any designation of its purpose, except that it was not divided into lots, and there was no allusion made to it in their certificate, it was *held*, that this was not a dedication to public use, under the statute, of the square.

2. SAME—*at common law.*  Where the plat of a village showed a square, not divided into lots as the other blocks, with no designation of its use, and the proof showed the sale of lots around the same at an enhanced price, and an intention to dedicate the square to public use, and a long acquiescence in the use of the same as a public park, this was *held* to be a dedication, at common law, to the public use.

3. SAME—*right to divert from original purpose.*  In the absence of any custom or usage having the force of law, the mere fact that a block in a country village is dedicated, by the original proprietors, for a public square, does not, of itself, confer upon the village trustees authority to appropriate it, in whole or in part, as a site for buildings for corporate purposes, against the wishes of any citizen interested.

4. SAME—*parol evidence to show purpose of.*  Where nothing appears to indicate for what purpose a grant or donation of land is made to the public, parol evidence is admissible to show the object to which it was to be

devoted. Where the intention is made manifest, at the time of the dedication, as to the use, extrinsic evidence will not be received to show an intention to devote the land to a different use.

5. SAME—*diversion from use intended, enjoined.* Where a block in a village plat was left blank, without words showing its use, so that it was not a dedication to the public, under the statute, but proof of the contemporaneous declarations and acts of the original proprietors clearly showed that they intended the same should remain an open square, for the convenience and common benefit of the inhabitants of the village; and the proof also showed a long acquiescence in such dedication on the part of the village authorities, it was *held*, that a court of equity would enjoin the trustees of the village from the erection of a town hall upon the same.

6. SAME—*right of county to appropriate a public square to its use.* A county has no inherent right to appropriate the exclusive use of a public square in a town, not dedicated expressly to it, but to the public or citizens generally. It has no more right than an individual to prevent or disturb the enjoyment of the inhabitants in any public grounds dedicated to their use.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. JOSEPH W. COCHRAN, Judge, presiding.

Mr. H. B. HOPKINS, and Mr. J. HOUGH, for the appellant.

Messrs. JOHNSON & HEWITT, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This bill was to enjoin the village board of trustees from moving the town hall from its present site and placing it on what is called the "square," or "public square." The original town of Princeville was laid out in 1837. No division was made of the centre block. It does not appear to have been divided into lots as other blocks were. It was left blank. The deputy surveyor, in his certificate, gives the front and depth measures of lots fronting on the "square," and gives the dimensions, in feet, of the "public square." Phillips, the county surveyor, simply certifies the plat is correct. The proprietors make their certificate as to the correctness of the plat made by the county surveyor, and "that the streets and alleys are of the size set forth in the plat."

By reference to the plat, we observe that neither the size of the lots nor the width of the streets or alleys is indicated in any manner upon it. No allusion is made to any "square," or "public square," except in the certificate of the deputy surveyor, who, perhaps, performed the labor in making the original survey.

It is proven the proprietors of the town recognized the blank square as public grounds, and sold lots fronting on it for an enhanced price. Whether the proprietors, in making their certificate, shall be regarded as having adopted the certificate of the deputy surveyor, the legal effect of what they did was an incomplete statutory dedication of that block of land to the public. It would certainly constitute a dedication at common law. Had the plat been in conformity with the provisions of the statute then in force, it would' have operated as effectually as a deed would have done to convey the title of the streets, alleys and public grounds in the corporation thereafter to be formed.

Neither the plat nor any of the certificates accompanying it expresses any limitation or condition as to the future use of the block designated as a public square, nor indicate in what manner the public may enjoy it. One of the proprietors, in his testimony taken at the hearing, says the land comprised in the block originally belonged to him; that it was the intention it should forever remain an open square, as a " beauty, convenience and charm to a country village," and it was with that view lots fronting on it were sold for an enhanced price. Had this intention been expressed on the plat, or even in the contemporaneous certificates, it is clear, on principle and authority, the village trustees could not lawfully appropriate it to any other public use. It would have been an abuse of the trust reposed in them, that the courts would not hesitate to control, that the property might be preserved for the uses intended by the donors.

Assuming, as we do, that there was a dedication of this square to the public, an important inquiry arises: with what

intention was the grant made? The purpose of the grantors was not manifested by the town plat, nor by any contemporaneous written instrument. Shall we presume, as a conclusion of law, it was for any particular purpose? Or shall we assume, in the absence of any explanatory word, it was the intention of the grantors that the corporate authorities, when they came into existence, should have the unrestricted control? Or shall we conclude it was for a site for buildings and offices for the transaction of municipal affairs? Or shall we hold the dedication of public grounds in the midst of a country village, no contrary intention being manifested, was for park purposes, or pleasure grounds, in which all the inhabitants of the village should have a common interest?

No usage prevails in this State, so far as we know, that would throw any light on the subject of our inquiries. In Pennsylvania, it has been held that, by a usage in that State, which has "acquired the consistence of law," the county has the right to erect its court house on the public square in all shire towns. *Com.* v. *Bowman et al.* 3 Penn. State R. 202. That usage, to a limited extent, prevails in this State, but we are not prepared to say it has acquired the force of law.

Where there is no express grant to the county, it certainly can not erect public buildings on the public square, unless authorized so to do by a custom of the country or usage to which all citizens are willing to submit as to a positive enactment. A county has no inherent right to appropriate the exclusive use of property not dedicated expressly to it, but to the citizens or public generally. It has no more right than an individual to prevent or disturb the enjoyment of the inhabitants in any public grounds dedicated to their use.

We are not aware that a custom or usage prevails anywhere, even in States where the usage as to court houses obtains, that city or village authorities may erect a town hall, or other public buildings, upon public grounds donated to public use, in the absence of any special declaration conferring the privilege.

This is not a county town. and we are not authorized to assume it was in the contemplation of the dedicators this block of ground was to be for a site for public buildings for the use of the municipal officers.    It is a more reasonable conclusion it was dedicated with a view to park purposes, to be ornamented and made a pleasure ground in the midst of the village.    If we are permitted to draw any conclusion, we think the latter is more consistent with the acts of the parties, and more in harmony with such usages as have obtained in the country.

Ever since the town was laid out, this square has remained unoccupied.    An effort. at one time, was made to locate the town school house upon it, but the measure was defeated by the earnest protest of citizens interested.

The village officers had purchased lots, in another part of the town, on which there were situated the town hall and calaboose.    Although more than a third of a century has elapsed, it was not until recently the corporate authorities attempted to appropriate the grounds for a site for a town hall.

A town school house is as much a corporate purpose as a town hall, and if the trustees could erect the latter upon this square, by a parity of reasoning, they could, with as much propriety, erect and maintain the former.    The village trustees disclaim any intention to erect a town prison on the square, but it is as much for a corporate purpose.as a town hall, and some subsequent board might so regard it.

In the absence of any custom or usage having the force of law, our conclusion is, the mere fact this block of ground was dedicated, by the original proprietors of the town, for a "public square," does not, of itself, confer upon the village trustees authority to appropriate it, in whole or in part, as a site for buildings for corporate purposes, against the wishes of any citizen interested.    The privilege could only exist by grant, or by some act of the donors equivalent to a grant.

Where nothing appears to indicate for what particular use a grant or donation of lands is made to the public, we can

see no reason why parol evidence is not admissible to show the object to which it was to be devoted. Otherwise. we should be left to determine the use by mere conjecture, or be compelled to declare the purpose as a conclusion of law, neither of which we are authorized to do. Where the intention is made manifest by any expression as to the use. the dedicators will not be permitted to show. by extrinsic evidence, they intended a different public purpose. The expressed declaration made at the time of the grant or donation must control.

The case at bar falls within the principle declared. Here was a donation of a square of land, in the centre of a town, to the public; but as to the manner it shall be enjoyed, or to what particular public use it was to be devoted, the grant is silent. There is no custom or local usage that controls. The town is not, and was not, expected to be a county seat, and no presumption arises it was for a site for a court house or other public buildings. Hence. resort must be had to the contemporaneous declarations and acts of the donors or grantors.

Considering the evidence offered on this subject, it clearly appears it was the intention of the proprietors of the town, in making the dedication of this block of ground, it should forever remain an "open square." for the convenience and common benefit of the inhabitants of the village. Acquiescence, on the part of the corporate authorities. for so great a period, as shown by the testimony, strengthens this conclusion.

The decree does not forbid the village trustees. as suggested by counsel. from inclosing the square, from making walks, and planting it with ornamental trees, or doing anything else to make it a pleasure-ground for the use of the inhabitants of the village, whenever they may think proper to do so.

The decree of the circuit court must be affirmed.

*Decree affirmed.*