14　　　　　SUPREME COURT.

Porter and the Town of Bartow v. Carpenter.—Statement of Case.

CHARLES F. PORTER AND THE TOWN OF BARTOW. AP-
PELLANTS, VS. WILLIAM T. CARPENTER, APPEL-
LEE.

1. Where a town plat lays off land into blocks and lots with spaces
   between the blocks that appear to form no part of them or the
   lots, but indicate spaces for streets and avenues, and the blocks
   and lots are sold with reference to the plat, the presumption
   is that the spaces between the blocks are dedicated to the pub-
   lic use as streets and avenues.

2. Where there is a complete dedication of streets and avenues on
   a town plat, as where the owner of land makes a plat of it
   with spaces between the blocks indicating streets and avenues,
   and sells the blocks and lots with reference to the plat, the
   purchasers have the right to insist on keeping the streets
   and avenues-open for public use as such, and they can not be
   closed up or obstructed unless in pursuance of legal authority?

3. If a town plat is complete in itself and free from ambiguity, it
   will control; but if ambiguous, extrinsic evidence may be re-
   ceived in its aid.

Appeal from the Circuit Court for Polk county.

### STATEMENT.

A bill was filed in this case by appellee against ap-
pellants for the purpose of preventing and removing
alleged obstructions and encroachments in a street in
the town of Bartow. The bill alleges, substantially,
that the town of Bartow was, in 1866, surveyed by one
Wilkinson and laid off into blocks of one acre each,
and each block subdivided into lots of one-fourth of
an acre, with streets running between said blocks, east
and west, north and south, sixty-six feet wide. That
several of the blocks in the southern portion of said
town were purchased and improved by building
houses and fences and planting trees, and that com-

## JANUARY TERM, 1897. 15

Porter and the Town of Bartow v. Carpenter.—Statement of Case.

plainant became the owner of block 8 by purchase from one Riggs, who had purchased the same in 1868, and improved it by building a dwelling house, fencing and planting trees and a garden thereon. That Riggs sold said block 8 in 1869 to complainant, who immediately moved thereon, and he had built, fenced, improved, rented, used, occupied and controlled it from the time of his purchase until the filing of the bill. That shortly after his purchase from Riggs complainant bought for valuable consideration blocks 7, 16, 17 and 18, some of which were improved by building dwelling houses and fences and planting trees, and all of said blocks were laid out, fenced, built on and improved with express reference to the survey mentioned. That complainant had fenced, occupied and cultivated block 8 for more than twenty-one years, and he had improved and cultivated all of said blocks for many years, and all of said improvements had been made with reference to the Wilkinson survey made in 1866. That upon block 8 were valuable improvements, a large boarding house, outhouses and an orange grove, and it was separated from block 17 on the south side by Stanford street, which was laid out, as stated, by Wilkinson in 1866. That complainant parted with the title to block 17, and in 1888 defendant Porter became the owner of the same by mesne conveyances, and he had extended his fencing thirty-one feet into Stanford street, and was planting trees and placing fences therein, and was actually closing up about one-half of said street, and leaving it, on the side adjoining complainant's block 8, a narrow alley, and that said defendant persisted in fencing and appropriating to his own use thirty one feet of said street to the exclusion

of the public and damage of complainant, and that the said fence and trees in said street were a nuisance that would greatly impair the value of complainant's property and render access to it inconvenient, and greatly obstruct the travel on said street.  It is further alleged that the town of Bartow became incorporated under the laws of this State in 1882, and from that time on had been governed by proper officers under laws and ordinances.   That in 1883 Jacob Summerlin, a citizen of Orange county, who had made a donation of lands in the town of Bartow for school purposes, proceeded to change the plan of survey of the town theretofore made, and in 1887 completed his said survey by running new streets and changing the lines of the old survey about thirty-one feet, and thereby changing the whole plan of said survey.   That the Summerlin survey innovated upon complainant's blocks and appropriated about thirty-one feet of said street adjoining them, and established corners in the street and run lines through yards and groves, cutting off houses and fences.   That it was insisted that said survey was legal and authorized by law, and the lots so surveyed were offered for sale and persons urged to buy the same, and that while the said Summerlin had no legal right to justify his acts, yet they had an injurious effect upon the property owners of the town.   That the said Summerlin survey was made in the corporate limits of the town of Bartow without authority of the corporation, but with the knowledge and tacit consent of the mayor and council, and which had the effect to unsettle the lines of the streets and blocks of the town.   That complainant presented a petition to the mayor and town council for relief, and that the streets be opened, but no action had been

taken on the petition, and the council had declined to take any action whatever in the premises.   The prayer is, that the original streets and lines thereof, and the blocks as laid out by the Wilkinson survey in 1866, be established, and that Porter be enjoined from further obstructing the street mentioned, and that he be required to remove all obstructions placed on the same.

The answer admits complainant to be the owner of block 8, and that it was bounded on the south by Stanford street.   It is also admitted that defendant Porter was owner of the lot described, immediately south of Stanford street, and that he had erected the northern line of his enclosure thirty feet in a northerly direction, running east and west along what complainant designated as Stanford street.   It is alleged that that particular part of the town of Bartow where the lots in question are located was not surveyed and laid out into lots by the town of Bartow, or any one acting for it, at the time of the Wilkinson survey as alleged, and it is denied that the Wilkinson survey extended to the southern portion of the town, where the lots in question are situated, and the further denial is made that the Wilkinson survey was ever adopted or legalized in any manner, or became binding upon defendants or any one else.   It is alleged that no legal survey of the town of Bartow was ever authorized or ratified by the corporation, or the property owners of said town until an official survey was made in 1885; that the survey described as the Wilkinson survey was meant to cover only certain county lands lying north of the tract in question, and which at that time was not included in the town of Bartow, and that

2

under the survey of 1885 that portion of the town where the lands in question are situated was surveyed and laid off. legalized and adopted by the town of Bartow. Further, that the setting of the fence on the Porter lot, of which complaint was made in the bill, could work no possible injury to complainant, and that if the relief prayed for be granted it would have the effect to move the southern boundary of every street running east and west, and south of said lot, thirty-three feet further south, and unsettle many property lines and produce litigation against the town. That Stanford street was a side street not much used, and not a business thoroughfare, and it could make no difference to complainant whether said street was thirty-three feet wide or sixty-six feet wide.

The town answering for itself that if complainant had any rights, his remedy was ample at law.

Defendant Porter answering for himself denies that the establishment of the northern line of his lot, where it is complained of, in any way affects the interest of complainant, and that if he was in any way damaged thereby, it was a question between him and the town of Bartow, that was amply able to respond in damages. That defendant bought his lot for the valuable consideration of $5,000 in 1888, and he then found the town of Bartow enforcing the survey of 1885, and the boundary lines as made by that survey induced his purchase; that complainant had given the lot to his daughter in former years and made no complaint while she owned it, and then stood by and saw defendant purchase the property without disclosing the fact of any claim in regard to the boundary lines of the street until after the title had become vested in defendant. It is further alleged that if the relief

asked for be granted, the effect would be to take thirty three feet of valuable land from defendant, running the entire length of his lot on the northern side, and to make up the deficiency he would have to fall back on the real estate immediately south of him and this would cause litigation to the town of Bartow and many of its citizens. It was also stated that complainant was the only party complaining of the survey of 1885, and he at one time acquiesced in it.

On final hearing upon bill, answer and proofs the chancellor decreed that "the streets laid out by the Wilkinson survey of 1866, running north and south, east and west, which may have heretofore or shall now mark the boundary line or lines of any of the real estate of the complainant William T. Carpenter, acquired under said survey be and the same are hereby established as the true and proper streets of the town of Bartow, and that said defendant, the town of Bartow, its agents or attorneys, or servants, and any and all persons be and they are hereby forbidden to alter, change or obstruct said streets in any manner, except the same shall be done in such manner as provided by statute in such case made and provided." Defendant Porter was specially enjoined from obstructing Stanford street as shown to exist by the Wilkinson survey of 1866, and that he remove therefrom any and all fences that he may have placed thereon.

The other facts in the case are stated in the opinion of the court.

*J. W. Brady*, for Appellant.

*Hammond & McCallum*, for Appellee.

MABRY, J.:

The petition of appeal filed in this case confines the errors assigned to the final decree rendered on the pleadings and proofs, and the refusal of the court to grant a rehearing on a petition filed for that purpose. We will, therefore, in accordance with the rule on the subject, confine this opinion to the assignments of error stated.

We decided in the case of Winter vs. Payne, 33 Fla. 470, 15 South. Rep. 211, that where the owner of a tract of land makes a town plat of it with spaces for streets laid out thereon, and conveys lots with reference to and bounded by such streets, he thereby dedicates the said streets to public use as such, and the grantees in the conveyances acquire the right to have said streets kept open for the benefit of light and air, as well as passageways. The cases sustaining this rule are numerous. It is said in one case—Meier vs. Portland Cable Ry. Co., 16 Oregon, 500, 19 Pac. Rep. 610, 1 L. R. A. 856—that "when a person maps off his land into town lots and streets, and offers his lots for sale by reference to the map, there is no mistaking his intention. He designs, if he is honest, that the streets shall belong to the public, and that they will be accepted and used by it as such, whenever the public necessity or convenience requires it. He does not, of course, anticipate that the various members of the community will rush forward in hot haste to accept his offer, but that its acceptance will abide the course and events of time. The public exigencies requiring the use of the property may not arise for years, but that will not, when he has induced parties to invest in his scheme, release him from the obligation of his

agreement.   His gift is unconditional, and he can never revoke it without the intervention of circumstances rendering it impossible for it to take effect." The case of Shea vs. City of Ottumwa, 67 Iowa, 39, 24 N. W. Rep. 582, announces the same principle. Where a town plat is made with spaces on it that appear to form no part of any of the platted lots, but indicate streets or avenues, and the lots are sold with reference to the plat, the presumption is that such spaces are dedicated to the public as streets or avenues.   Purchasers of such lots have a right to rely upon the presumption that they are buying property with all the rights and privileges of abutting owners on urban highways, unless there is something in the plat to remove such presumption.   City of Denver vs. Clements, 3 Colo. 472; Hanson vs. Eastman, 21 Minn. 509; City of Indianapolis vs. Kingsbury, 101 Ind. 200.   If the plat is complete in itself and free from ambiguity it will control, but if ambiguous, extrinsic evidence may be received in its aid.   Brown vs. Manning, 6 Ohio, 298, S. C. 27 Am. Dec. 255; Village of Princeville vs. Auten, 77 Ill. 325.   Where there is a complete dedication, as when the owner of land makes a plat of it with spaces for streets laid out thereon, and lots are sold with reference to the plat, the purchasers have the right to insist on keeping said streets open for public use as such, and they can not be closed up or obstructed unless in pursuance of legal authority.

In the case before us there is not such a clear and full presentation of the facts, evidently in existence, as to leave any adjudication on them free from doubt, but applying the principles of law stated, and giving proper consideration to the finding of the chancellor on the facts, we are of the opinion that enough is

shown on the part of complainant below to sustain the decree enjoining the appellant Charles F. Porter from placing any obstructions in what is known as Stanford street in the town of Bartow.

It would require considerable space to present all the facts bearing upon the question involved in the case, and, as its determination is one of fact under the principles of law stated, we do not deem it necessary to go into details. It appears that the land on which the town of Bartow was originally located was donated by Jacob Summerlin for a county town site, forty acres to the county of Polk for county purposes, forty acres to churches and forty acres for school purposes. A town plat, certainly of part of the donated lands, was made in 1866, and lots sold according to this plat. There is testimony tending to show that both the county and school lands were surveyed and platted by Robert Wilkinson in 1866, and there is testimony tending to show that only the county land was surveyed and platted at that time. There is in the office of the clerk of the Circuit Court for Polk county, and has been for a long time, an old plat, and it appears to have been recorded in a book of accounts of the County Commissioners many years ago. On it is marked the names of purchasers of designated blocks and lots, showing in some cases payments in cash, and in others not paid. We have no doubt from what is shown that this plat, or the original of it, was the basis of the primary location of the town of Bartow, and that lots were sold with reference to it. It indicates by its plan of execution that eighteen blocks were laid off as town blocks, with divisions of blocks into lots, and also spaces around the blocks for streets or urban highways. The blocks and lots are num-

bered, but there is nothing to indicate the contents of blocks or lots, or the width of the spaces for streets. The testimony clearly enough shows that the design was for each block to represent one acre, divided into four lots, and the spaces to represent streets sixty-six feet wide. The lots of appellee are not covered by the old plat referred to, and no plat has been put in evidence covering them. The bill alleges that the portion of the land where appellee's lots are situated was surveyed in 1866 into blocks of one acre each, divided into lots of one-fourth acre, and with streets running between said blocks, east and west, north and south, sixty-six feet wide, and that lots, including those owned by appellee, were purchased and improved with direct reference to this survey. The answer admits a survey made by Wilkinson in 1866, and that appellant Porter owned lot 17, immediately south of Stanford street, and that he had erected the northern line of his enclosure thirty feet in a northerly direction, running east and west along what was designated in the bill as Stanford street, but it is denied that the Wilkinson survey extended to the southern portion of the town, where appellee's lots are situated, or that said survey was ever adopted or legalized, or became binding upon the defendants or any one else. Here is presented the only real defense to the bill, so far as appellant Porter is concerned. We have become satisfied that the testimony submitted to the court will sustain the view that there was a survey and town plat of the *locus in quo* in 1866, corresponding with the old plat referred to of the county land, and that blocks and lots, as early as 1868, were purchased and improved with reference to such plat. Appellee has owned block 8, on which his hotel is located, since

1869, and it is admitted that this block is bounded on the south by Stanford street. This conclusion places appellee in a position to insist on maintaining the streets as they were laid out before his purchase. He should not change the streets in any way by encroachments on them, but he has the legal right to insist on their continuation, open and free, as passageways just as they were laid out in the original survey, and when the abutting lots on them were purchased. The answer admits that Porter was putting fencing in Stanford street in a way to obstruct it, if it was originally sixty-six feet wide. Complainant's proof tended to show that all the streets around the blocks were sixty-six feet wide. The town of Bartow became incorporated in 1882, but it is not shown that the municipal authorities ever authorized or directed any survey to be made of the town, and if it had the accrued rights of purchasers of lots bounded on streets could not be interfered with unless in accordance with legal authority.

Jacob Summerlin who, it seems, was acting for the trustees of the school lands, had a survey made of the school "forty" in 1884, but we need make no further reference to this survey than to say that appellee's rights, acquired by his purchases under a former survey, could not be thereby destroyed. The Summerlin survey doubtless served a useful purpose, but, covering the field of a former survey, its utility is in proportion to its accuracy to such former survey.

The bill should have been dismissed as to the town of Bartow. It is not shown therein that the town had any agency in obstructing the street in question, and the only complaint made as to it is that a petition to have the obstruction stopped or removed had been de-

South. Bell Tel.' & Tel. Co. v. D'Alemberte.—Syllabus.

nied.   We discover no case whatever against the town for the interposition of the writ of injunction.

There is nothing in the record to show that the court erred in refusing the application for a rehearing.

Let the decree be reversed as to the town of Bartow, and modified as to Charles F. Porter so as to enjoin him from placing obstructions in Stanford street on the south side of appellee's lot 8 in the town of Bartow, and to direct the removal of those already placed therein.   The costs of this suit, as to the town of Bartow, to be paid by appellee, and the other costs in this court to be paid by appellant Porter.