Cecelia Blanche Quinn, Appellee, v. Irving Park District, Herman A. Ott, Arthur A. Haarstad, Charles E. Mitchell, Andrew L. Tracy and Albert C. Brown, Commissioners of Irving Park District, and Otto Schmidt, Appellants.

## Gen. No. 22,313.

1. MUNICIPAL CORPORATIONS, § 936*—*when exclusion from park may be enjoined.* The right to the use and enjoyment of a park is a valuable right and any one who is wrongfully deprived of its use may maintain a bill to restrain his exclusion therefrom.

2. PARKS AND BOULEVARDS, § 12*—*what is nature of title of commissioners of Irving Park District.* The Irving Park District, organized and established under the provisions of the Act in force July 1, 1895, Rev. St. ch. 105, ¶ 162 *et seq:* (J. & A. ¶ 8172 *et seq.*), is an agency of the State and the title to the park located in the district is held by the commissioners in trust for the people of the State at large.

3. MUNICIPAL CORPORATIONS, § 936*—*when ordinance of park commissioners limiting use of facilities in park is void.* Under the Act in force July 1, 1895, Rev. St. ch. 105, ¶ 162 *et seq.* (J. & A. ¶ 8172 *et seq.*), organizing and establishing the Irving Park District, an ordinance adopted by the commissioners of said district limiting the use of a swimming pool and gymnasium constructed by them in a park which they established in said district to residents of the district, *held* null and void.

Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the February term, 1916. Affirmed. Opinion filed October 10, 1917.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.
    Vol. CCVII 29

SPENCER WARD, for appellants.

THOMAS J. O'HARE and T. BERTRAM MCGRATH, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal appellants seek to reverse a decree of the Circuit Court of Cook county, making a preliminary injunction perpetual and enjoining them from excluding appellee from the swimming tank and gymnasium located in Independence Park. The appeal was prosecuted direct to the Supreme Court and by that court transferred to this court.

The record discloses that Irving Park District, located in Chicago, was organized and established under the provisions of an Act of the General Assembly, in force July 1, 1895 (chapter 105, par. 162 *et seq.*, Rev. St., J. & A. ¶ 8172 *et seq.*); that commissioners were elected and established in the district a park known as Independence Park; that the commissioners had caused to be constructed in the park a swimming tank and gymnasium; that a great number of persons, both male and female, residents and nonresidents of the park district, made use of the swimming tank and gymnasium; that the park commissioners passed a resolution or ordinance providing that no one except a resident of the park district should be admitted to the swimming tank and gymnasium; that appellee owned certain real estate in the park district and paid taxes thereon, but resided just without the limits of the district; that, prior to the passage of the resolution or ordinance, she had been admitted to the swimming tank and gymnasium, but afterwards was excluded therefrom. She then filed the bill in this case to restrain the enforcement of the resolution or ordinance and praying that the same be declared null and void

and that she be held entitled to the use of the swimming tank and gymnasium. A preliminary injunction was issued and, upon issues joined, the cause was heard before the chancellor, a decree entered making the injunction perpetual and holding that the commissioners were without authority to pass the ordinance or resolution; that the same was therefore null and void, and that no discrimination should be made between the residents and nonresidents of the park district.

Appellants contend that appellee has no standing in a court of equity, for the reason that the injury, if any, which she has suffered is not different from that sustained by all other persons similarly situated, and that she as a taxpayer cannot maintain the bill, unless the acts sought to be enjoined will increase her taxes or will otherwise result in a pecuniary loss to her.

In the case of *City of Moline v. Greene*, 252 Ill. 475, it was held that the legal title to library property located in the City of Moline was held in trust for the inhabitants of the city, and that a resident of the city could maintain a bill to prevent an illegal appropriation of the property. In that case it was sought to condemn a portion of the library property for the widening of a street. Objections were filed by two residents of the city. It was contended that they had no right to be heard. The court there said (p. 480): "If the appellant has no right to condemn the property of the library for the purpose for which it is here sought to be condemned, and if appellees, as taxpayers and two of the *cestuis que trustent* for whose benefit the property is held, would have the right, by injunction, to prevent the illegal appropriation of the property, it would seem illogical to hold that they have no such interest as would entitle them to be heard in the proceeding to take the property, but would be entitled to a hearing in another and different forum upon the same question and for the same purpose. In other

words, if appellees might have enjoined the taking of
the land by application to a court of equity, we see
no valid reason for holding that to be their only rem-
edy when the same result might be accomplished by
objections in the County Court. As inhabitants and
taxpayers of the city, for whose use and benefit the
library was established and the title to it held in trust,
they were interested and concerned in the preservation
of the property for the purposes to which it was de-
voted." To the same effect is *Village of Princeville v.
Auten,* 77 Ill. 325.

The right to the use and enjoyment of a park is a
valuable right, and any one who is wrongfully deprived
of its use may maintain a bill to restrain his exclu-
sion therefrom. *City of Moline v. Greene, supra; City
of Alton v. Illinois Transp. Co.,* 12 Ill. 60; *Village of
Princeville v. Auten, supra; Davenport v. Buffington,*
97 Fed. 234.

Appellants contend that under the provisions of the
act under which the park district was created, the com-
missioners are authorized and empowered to limit by
ordinance the use of the swimming tank and gymna-
sium to residents of the park district. For the pur-
poses of this case we shall assume that the action of
the commissioners is shown by an ordinance and not a
resolution.

Section 1 of the Act (J. & A. ¶ 8172) provides:
"That any territory situated in the same county or in
two adjoining counties under township organization
and so lying as to form one connected area, no portion
of which shall be already included in a park district
or in a township whose corporate authorities are
authorized by law to levy special taxes or special
assessments to maintain a public park, may be organ-
ized into a park district for the establishment, con-
struction and maintenance of public parks and
boulevards in the manner following":

Section 2 (J. & A. ¶ 8173) provides that any one hun-

dred legal voters resident within the limits of such proposed park district may petition the county judge of the county in which the territory lies, or, if in two counties, the two county judges, to cause the question to be submitted to the legal voters of such proposed park district, whether they will organize into a park district under the act; that the petition shall define the territory intended to be embraced in the district and state the name of the proposed park; that the county judge or judges shall then order an election to be held within the boundaries of the proposed district.

Section 5 (J. & A. ¶ 8176) provides, if the majority of the votes cast shall be in favor of the proposed district, the territory shall be deemed organized into such district, and by the name and style named in the petition it may sue and be sued, contract and be contracted with, acquire and hold the necessary real and personal property, adopt a common seal and shall constitute in law and equity a body corporate and politic and exercise the powers specified.

Section 6′ (J. & A. ¶ 8177) provides for the election of commissioners by the legal voters who reside within the district.

Section 11 (J. & A ¶ 8182) provides that the commissioners shall constitute the corporate authorities of the district and have power to pass all necessary rules and regulations for the proper management and conduct of the business for carrying into effect the object for which the park is formed. Power is then given to them to manage and control the property, and by ordinance regulate and restrain the use by the public, or by individuals of the parks, boulevards and driveways, and exclude therefrom funeral processions, etc.

Section 12 (J. & A. ¶ 8183) provides that the board of commissioners shall keep a regular book of records which shall be open to any person residing in the district at all reasonable times.

Section 14 (J. & A. ¶ 8185) authorizes the commissioners to lay out, establish, construct and maintain parks in the district, with full power to control, manage and govern them.

It is argued that while the statute authorizes the construction and maintenance of public parks, it does not mean the public at large, but refers to the community within the park district, and that this is shown by the act itself, as it provides in the first instance the petitioners seeking to form the proposed park district must be residents thereof; that the vote taken to determine whether the park district shall be formed is likewise limited to the residents of the proposed district; that each of the commissioners elected must be a resident of the district; that the books of record required to be kept can be inspected only by a resident; that if it is sought to sprinkle the streets within the district, the question must be passed upon by the residents and therefore the commissioners, in a proper case, may by ordinance exclude nonresidents from the use of the swimming tank and gymnasium which is constructed in the park; that in the instant case, owing to the great number seeking to use the tank and gymnasium, to prevent overcrowding, it was a necessary and reasonable exercise of the police power lodged in the board of commissioners to pass the ordinance in question; that the case is analogous to the rules and regulations governing public libraries and public schools, and that in these instances the persons legally in charge of the libraries and schools may respectively exclude therefrom nonresidents of the city in which the library is located, or the school district in which the school is located.

Section 6 of the Library Act (chapter 81, Rev. St., J. & A. ¶ 7084) provides: "Every library and reading-room, established under this Act, shall be forever free to the use of the inhabitants of the city where located, always subject to such reasonable rules and

regulations as the library board may adopt. * * *
And said board may extend the privileges and use of
such library and reading-room to persons residing
outside of such city in this State, upon such terms and
conditions as said board may from time to time by
its regulations prescribe.''

By paragraph 4, sec. 115, ch. 122, Rev. St. (J. & A.
¶ 10136) the board of school directors is given power,
''To assign pupils to the several schools in the dis-
trict; to admit nonresident pupils when it can be done
without prejudice to the rights of resident pupils.''

From the foregoing it clearly appears that under
the statute a library constructed in any city or town
is primarily for the use of the inhabitants of such city
or town, but that the board having control of the
library may extend the privileges to nonresidents of
such city. In the case of assigning pupils to schools,
the statute likewise expressly provides that the board
of directors shall assign the pupils to the several
schools within the district and may also admit non-
residents; while in the instant case no such provision
is found in the statute under which the park district
was established, but the power of the officials of a
park district is to construct and maintain public parks,
and the use of such parks is nowhere in the statute
limited to the inhabitants of the district.

In the case of *State Public Utilities Commission v.
Monarch Refrigerating Co.,* 267 Ill. 528, in passing on
the meaning of the word ''public'' as used in the act
concerning public utilities, the court said (p. 533):
''As to what is meant by the word 'public' when used
in this connection, it is very difficult to define or ex-
plain it in any simpler language than by the use of
the word 'public' itself. The Century Dictionary thus
defines the word 'public': 'Of or belonging to the
people at large; relating to or affecting the whole
people of a State, nation or community; * * * not

limited or restricted to any particular class of the community.' The New International Dictionary defines it: 'Of or pertaining to the people; relating to or affecting a nation, State or community at large.' In 32 Cyc. 748, one of its meanings is given as 'open to all the people; shared in or to be shared or participated in, or enjoyed by the people at large; not limited or restricted to any particular class of the community.' "

In *City of Alton v. Illinois Transp. Co., supra,* certain lands were subdivided and portions bordering on the Mississippi River were designated on the plat as "common or promenade to be used in common"; "ground for use as public landing." The City of Alton sought to obtain possession of these lands from the Transportation Company. One of the defenses interposed was that the action was barred by the statute of limitations. The court held that the citizens of Alton did not have the unqualified control and disposition of the property, "but the citizens of the State generally have an equal right with them in the appropriate enjoyment of the dedication," and therefore the statute of limitations did not apply, as it does not run against the State.

To the same effect is *City of Chicago v. Wright,* 69 Ill. 327, where it was said: "The city has possession (of certain streets) for the use of the public. The right of use is not limited *exclusively* to the citizens of Chicago, but the citizens of the State generally have an *equal* right with them in the appropriate enjoyment of the dedication. This was so held in *City of Alton v. Transportation Co.,* 12 Ill. 60, and is a proposition that none can gainsay."

The Irving Park District is an agency of the State, and the title to the park located in the district is held by the commissioners in trust for the people of the State at large. *McCormick v. South Park Com'rs,* 150 Ill. 516; *City of Moline v. Greene, supra; City of*

*Alton v. Illinois Transp. Co., supra; City of Chicago v. Wright, supra.*

It follows, therefore, that the park, swimming tank and gymnasium located therein are held for the use of the citizens of the State generally and not for the exclusive use of the citizens of the park district, and the ordinance which seeks to limit the use to the citizens of the district is null and void.

The decree of the Circuit Court of Cook county is affirmed.

*Affirmed.*