H. B. ANTHONY SHOE COMPANY, complainant and appellant,

WEST JERSEY RAILROAD COMPANY, defendant and respondent.

[Argued March 25th, 1898.   Filed December 30th, 1898.]

1. Where the abutting owner of land on a street owns the fee to the middle of the street, he may maintain a bill to enjoin an unlawful erection on the street in his front.

2. Where he does not own the fee of the street, he cannot maintain a suit to restrain a nuisance which injures him only in a right enjoyed by him as one of the public.

3. Under ordinary circumstances where there is no special injury to the complainant, and where the remedy by indictment is sufficient to abate the nuisance, and to restore to the public use the entire highway, equity will not interfere even on behalf of the public.

On appeal from a decree advised by Vice-Chancellor Pitney, who delivered the following opinion :

The complainant is an abutting owner on the west side of a street called Seventh street, in the city of Camden, along a portion of which runs, longitudinally, the West Jersey railroad. He says this railroad company has laid an additional track, on the west side of its previous track, and immediately in front of his premises, which are on the west side of Seventh street, in such a manner as to interfere seriously with the approach to his premises.　And it seems to me that the facts, as shown, support the allegation that the additional track does interfere so seriously with the approach to his premises that if his right in the premises were perfectly clear this court would enjoin the defendant company.

I have remarked already, in the course of the argument, that this is an action brought in a court of equity not to enforce an equitable right, but to protect a party in the enjoyment of a strictly legal right, on the ground that the remedy for the infringement of that right is inadequate at law.　There is a large and familiar class of cases where this court does interfere to protect a party in the enjoyment of a purely legal right, and if the complainant's right here was perfectly clear, and well settled at law, my impression is that it would be a case within that class. But in order to bring him there it is perfectly well settled that his right must be clear at law, and this court interferes only in those cases where the right is clear at law.　That doctrine was established in the case of *Prudden* v. *Morris and Essex Railroad Co., 4 C. E. Gr. 387 ; S. C. on appeal, 5 C. E. Gr. 530*, followed by the case of *Higbee* v. *Camden and Amboy Railroad Co., 4 C.*

*E. Gr. 277*, and in numerous cases since, and, although the propriety of its application in the *Prudden Case* has been seriously doubted by judges and members of the bar, yet the principle laid down has never been impugned and is as old as the occasion of the exercise of the jurisdiction now asked for.

Now the question is, whether the complainant's right is clear at law. And it arises in this wise: Somewhere in the forties the property here in question belonged to two brothers named Cooper, or one of them, who was the original proprietor of land in the neighborhood of the city of Camden. They laid it out in streets, on paper, and made a grant to Hart and McCurdy, describing the land which they granted as running to the centre of Seventh street, as proposed.

Later, Hart and McCurdy divided that land by a deed between them, or by some partition proceedings, in which Seventh street is laid down on a map, and the property here in question came to be owned by Mr. Hart by a grant which recognized, as between Hart and McCurdy, the existence of Seventh street and located it with substantial accuracy ; but at that time it had never been used or opened as a street, had never been fenced or traveled as a street, but was a part of an unreclaimed common. In 1854 the West Jersey railroad was built from Camden to Salem and Cape May, and its centre line was laid along what the parties believed to be, and what I take for present purposes to be, the true centre line of this paper street called Seventh street. At that time it had never been accepted by the public, never been used by the public, never been recognized by the city of Camden as a street, and was purely a paper street, and, so far as actual dedication goes, it was limited to the grantees. As between all the grantees of Hart and McCurdy and anybody that they had conveyed to in the same way, it was binding between them. But the public had acquired no interest or right in it. So far as the evidence goes, it seems to me that no irretrievable step had been taken on the part of the owners by reason of which they could not have withdrawn the street from the public, so far as dedication was concerned.

In 1854 the West Jersey Railroad Company took proceedings

to condemn a strip twenty feet wide on the west side of the centre line of this Seventh street and the centre line of their road, as located and on file in the office of the secretary of state, according to law, for the use of their railway. They got an award of commissioners in the ordinary way, and that award of commissioners was accepted by Mr. Hart, who was the then owner of this particular block of land, and he gave a deed to the railroad company, which is dated on the 9th of September, 1854. It recites the award of the commissioners and then witnesseth that Mr. Hart, in consideration of $525, did "grant, bargain, sell, release and confirm unto the said party of the second part, their successors and assigns," the land in question,

"together with all the privileges and appurtenances to the same belonging; to have and to hold unto the said party of the second part [that is, the railroad company] for the use of the said railroad company for and during the continuance of the said railroad, to their only use, benefit and behoof forever."

It is claimed by the complainant that this deed must be construed in connection with the award of the commissioners, which was only of a right of way. I expressed the opinion during the argument that that was probably so. I shall adhere to that, although I am not at all sure that the right of the railroad company was not increased by that grant over and above what they got by the award of commissioners. I am not sure that it was not a conveyance of the fee, and I am not sure that I am right in not so holding; but for present purposes I do not think it necessary for me to determine the question whether or not that deed did increase the right of the railroad company. At that time, by the consent of Mr. Hart, who is the grantor of the complainant, in whose shoes the complainant stands, the railroad company had a right, under that deed, to build an ordinary railway on any part of that strip, and nobody could gainsay them. I am also of the opinion that they might have fenced it in, because I think it is well settled that a railroad company may fence in their right of way.

Although under the decision of the supreme court in *Taylor* v. *Long Branch Railroad Co., 9 Vr. 28,* affirmed in the case of

H. B. Anthony Shoe Co. *v.* West Jersey R. R. Co.

*Hibernia Railroad Co.* v. *De Camp, 18 Vr. 518,* they acquire under their award only an easement, yet the exercise of the easement is so nearly exclusive of the true owner, that they have a right to fence it in. But I do not consider that as absolutely necessary to be decided in this case. They did not fence it in, nor did they occupy the whole with their tracks. They laid a single track, the centre line of which was the centre line of Seventh street as supposed, and was the easterly line of the twenty-foot strip conveyed by Hart to them, the railway track occupying, as I suppose it did, some eleven or twelve feet, one-half of which—six feet—was on the right of way conveyed by Hart, and that left about fourteen feet which they did not actually occupy, nor did they fence it in. That condition of things continued until about the year 1875, less than twenty years before this bill was filed. At that time the population of Camden began to extend in that direction ; buildings were put up in the neighborhood, and people began to build on the west side of Seventh street, and the complainants, in the year 1880, purchased their present lot from Hart's grantee, and then built the building and devoted it to the use of a large factory ; and other buildings were put up on each side of it and along Seventh street about that time. Then the public began to use not only that portion of the original laying out of Seventh street which was west of the twenty-foot strip conveyed by Hart to the railroad—a strip about eighteen feet, I think, from fifteen to eighteen feet wide—between the twenty-foot strip and the building line—the public began to use not only that fifteen or eighteen feet, but also the fourteen feet belonging to the railroad company included in the grant and not used by it, making a strip about thirty feet wide, which constituted, practically, Seventh street. That went on for about fifteen years. Then the railroad company wanted to occupy their right of way by another track, and they attempted to do so, and attempted to fence it in, and some difficulty and dispute arose—suits—and both parties appealed to the common council, and finally in December, 1891, the common council passed an ordinance allowing the railroad company to lay a track on this fourteen-foot

strip—the westerly side of the twenty-foot strip.   The common council put conditions upon it, and the only conditions they put upon the railroad company were that where another street crossed it, a crossing for vehicles should be made by the railroad company.    The railroad company accepted that formally, by vote of its board of directors, and thereby they became entitled, so far as the common council could entitle them, to lay that track in the ordinary way excepting where streets crossed the tracks, where they were to put in planking.   Now, the property of the complainants is about half way between two cross streets, so that they do not have any benefit from that condition.   The common council did not see fit to put in their ordinance a condition that between the street crossings this additional track should be provided with intermediate planking so that the public could cross.   They only made the condition that it should, for that space, be on a level with the street.

The complainants say that that act of the common council could not give the defendant a right to lay that track.   They say, notwithstanding our grantor nearly forty years ago made a deed to the railroad company for the building of a railroad in the ordinary way, yet this court will now impose upon them a condition, viz., that they shall plank it, so that complainants can drive over it.

Now, that depends upon whether they have a legal right— whether their legal right in the premises has been invaded.   And I am entirely clear in my mind that up to the time the public began to use it they could not have had any such right.   They had granted it away—it had been taken by condemnation proceedings—and they had given a deed confirming those proceedings, and there was no condition put therein that the railroad should be so built that a wagon could drive lengthwise over the ties, and the whole thing must be taken and construed in view of what is the general knowledge of the court as to the way in which railroads are built.   They are ordinarily built with the ties on top of the ground and the rails spiked on top of them, which leaves it in a rough condition, so that a vehicle cannot pass over it.

The railroad company once had that right by·deed, as against these complainants, and if they have lost it they have lost it by reason of what has occurred within the last fifteen or twenty years. They had not lost it up to that time. These complainants say that that part of the defendant's strip is a public street—that it has become such—and that they have a particular interest in having a right to go over that part of the street in getting access to their building, and are thereby particularly injured, over and above the public at large. That right complainants' grantor gave away with his deed—when he gave his deed. That right he lost then. Have the complainants acquired it by the fifteen or seventeen years' permissive use by the company in the way I have mentioned? They have permitted the public to use it, and they have permitted these buildings to be built. That is the only ground that I can see that these complainants can go upon.

Mr. Justic· Depue, in the *Prudden Case, 5 C. E. Gr. 541,* uses this language:

" Where a person entitled to a right in the nature of an easement encourages another, though passively, to acquire title and expend money on the assumption that that right will not be asserted, he will not be permitted in a court of equity to assert his right to the prejudice or injury of those who have been encouraged, by his acquiescence, to expend money on the faith that his right will not be exercised to defeat just expectations upon which such expeditures had been made. Where such acquiescence is continued for a period of twenty years, or even less, in a court of equity his right will be extinguished by estoppel."

There the railroad company had acquired by condemnation or by deed—acquired by deed from McFarlan—land on one side of the street up to the middle line, and Prudden owned the land on the other side, and the railroad company had occupied only a portion of their land and had allowed the public (just exactly what the West Jersey Railroad Company did here) to use a portion of what was their right of way. The court said that Prudden, by standing by and not objecting to the railroad using this strip, had acquiesced in it. But they never did use this

strip at all. This part they had allowed the public to use, and had put no railroad track on it; but when Prudden came into a court of equity and asked for an injunction the court refused it on the ground that he had acquiesced in their general use of it as a railroad, and when met in my argument by the fact that they had permitted this particular strip to lie open to the public and let the public use it for more than twenty years the answer was that the fact that they had a grant for a railroad there, but had not used the whole of it, but had used a part of it—that the use of that part was notice to Mr. Prudden that some day or other they would need to use the other part, and that he had acquiesced in that and thereby lost his remedy. That seems paradoxical, the way I have stated it. But that is the kind of acquiescence that Mr. Justice Depue said in a court of equity would bind Mr. Prudden. But it seems to me, with great deference, it should have bound the railroad company just as much there in favor of Prudden as the use here would bind the railroad company in favor of Hart's assigns. There Mr. Prudden had no legal title to the part of the highway that the company was going to use; here the complainants, under a strict construction of that deed, have no title to the part of the highway which the railroad company used. There the railroad company had allowed the part that they proposed to use to lie open to use by the public for more than twenty years; here the railroad company has allowed the public to use this strip for less than twenty years. And there Prudden applied for an injunction enjoining the company from laying the track; here the complainants apply for an injunction enjoining the company from using their track unless they put in planking so that they can drive over it.

Next comes the *Higbee Case.* There the chancellor refused the injunction when the common council had given permission to build a railroad station right in the street and right on the land that Higbee owned, and he did it on final hearing. He said it was not perfectly clear that the court would hold that Higbee did hold title to the land to the middle of the street; his title did not go there by the calls of his deed, and the rule afterwards established, in the case of *Salter* v. *Jonas, 10 Vr. 469,*

that the title went necessarily to the middle of the street, in the absence of anything to the contrary, had not been established at that time, and therefore Higbee's right was not clear, and the chancellor would not grant the injunction.

The *Higbee Case*, as well as the *Prudden Case*, seems to stand in my way, unless I can say that the fact that the railroad company allowed that strip to be used for less than twenty years by the public and allowed houses to be built along that street gave those people a right—a well-settled legal right—to have it so continued, or, if a railroad be built upon it, to have it built in such a way that the public could ride over it in wagons. I do not think the right is clear. I think it is very doubtful, indeed, and to be in doubt about that question is to be resolved in this case.

I will advise a decree dismissing the bill.

*Mr. Thomas B. Harned*, for the appellant.

*Mr. Joseph H. Gaskill*, for the respondent.

The opinion of the court was delivered by

Van Syckel, J.

The complainant in its bill alleges that it is the owner of land abutting on the west side of Seventh street, in the city of Camden, upon which there is a shoe factory, and that the defendant company has laid and is using four separate parallel tracks on the said street in front of its premises, whereby complainant is practically excluded from the use of the street. The bill denies the right of the defendant to maintain its tracks in the street, declares they are a nuisance and prays that the defendant may be enjoined from the further appropriation of the highway to its uses.

The facts presented by the case are these:

Richard M. Cooper, in his lifetime, owned in fee a large tract of land embracing what is now called Seventh street and lands lying on both sides of it, also including the premises now owned by the complainant. In 1845 the executors of Richard M.

Cooper conveyed to Hart and McCurdy a portion of the said tract lying on the southerly side of what is now Seventh street, in which deed Seventh street is described as a "proposed street." With the exception of this language in the executors' deed of 1845, there is nothing in the case touching the question of dedication of the street by the Coopers, and therefore, at the time of the conveyance to the defendant company hereinafter stated, there is no evidence to establish a dedication by the Coopers of the half of Seventh street owned by them.

In 1847 Hart and McCurdy divided the lands which they had acquired by the deed of 1845, each conveying to the other. In said deeds they described the land conveyed as running along Seventh street, but the street at that time had not been opened to the public or used as a street.

In 1854 the defendant company built its railroad, and its centre line was laid along the centre line of this paper street called Seventh street.

The railroad company took proceedings to acquire this land, on which their tracks were laid, by condemnation. Commissioners were appointed, who, by their report dated September 11th, 1854, awarded to McCurdy, the owner of the fee, the sum of $525. This sum was accepted by McCurdy, who, by his deed dated September 19th, 1854, conveyed to the railroad company, in fee, the one-half of the land embraced in what is now called Seventh street, being the strip of land on which its tracks are laid. Hart also made a like conveyance to the railroad company by deed of even date with that of McCurdy to the railroad company.

The complainant derives its title to the lot abutting on Seventh street from Hart and McCurdy, but by a conveyance long subsequent to the deed to the railroad company.

The railroad company, therefore, is the legal owner of the fee of that part of Seventh street on which the premises of the complainant abut, and the title of the complainant extends only to the exterior line of the highway.

When Hart and McCurdy, in their deeds to each other, described the land conveyed as running along Seventh street, there

had been no dedication of the half of that street which was owned by the Cooper estate; as to that estate, it was only a "proposed street."

Dedication is a question of intention, and the owner is not concluded until his purpose to surrender his land to the public use is clearly manifested.

At the time Hart and McCurdy made partition they knew that so far as the Cooper estate was concerned it was a "proposed street only." Speaking for myself, I entertain grave doubt whether an intention should be imputed to them to dedicate their half of the street irrevocably to the public before there was a dedication by the Coopers of the other half.

It is not necessary, however, to decide that question. The case can be disposed of on another ground, in accordance with a well-settled doctrine in equity.

Assuming that the defendant company has laid its railroad tracks in the public highway without authority and that they constitute a public nuisance, the complainant cannot successfully maintain this suit.

Where the injury complained of is an erection in front of complainant's property and he owns the soil in the street upon which it is built, the injury is to his individual rights and not as part of the public, and the suit must be instituted in his name.

In this case, as has been before shown, the complainant has no title to the soil in the street in front of his premises or to any part of it. His injury, in legal contemplation, is not different in character from that which every other citizen sustains.

The complainant's right to pass upon the street is that, and that only, which may be exercised by every other individual.

A suit cannot be maintained to restrain a nuisance which injures the complainant only in rights enjoyed by him as one of the public. In such case an information must be filed for the public in the name of the attorney-general on behalf of the state, and it makes no difference as to the remedy that the individual would be much more inconvenienced by the nuisance than many others. *Higbee* v. *Camden and Amboy Railroad Co., 4 C. E. Gr. 277.*

In cases of nuisance it is well settled that a complainant cannot acquire a stable footing in a court of equity without showing some special injury to himself distinct from that done to the public at large. *Allen* v. *Board of Freeholders, 2 Beas. 68; Van Wagenen* v. *Cooney, 18 Stew. Eq. 25; Halsey* v. *Rapid Transit Co., 2 Dick. Ch. Rep. 380; Township of Raritan* v. *Port Reading, 4 Dick. Ch. Rep. 12.*

Under ordinary circumstances, where there is no special injury and where the remedy by indictment is sufficient to abate the nuisance and to restore to the public use the entire highway, equity will not interfere. *State* v. *Morris and Essex Railroad Co., 3 Zab. 360; Freeholders* v. *State, 13 Vr. 263; Attorney-General* v. *New Jersey Railroad Co., 2 Gr. Ch. 136; Higgins* v. *Mayor, &c., 4 Halst. Ch. 309.*

The decree of the court of chancery dismissing the complainant's bill should therefore be affirmed.

GARRISON, J. (concurring).

I do not think that the court of chancery was called upon to settle any legal question in order to decide the controversy submitted to it. If it be assumed that the railroad company has the fee in Seventh street, and that the complainant has no estate or interest therein, the equitable question still remains, viz., the exercise of the co-ordinate easements of the railroad company and of the public in Seventh street. The regulation of conflicting easements is exclusively a chancery power. Therefore, I cannot agree with the majority of the court upon the question of jurisdiction.

I cannot, however, vote to reverse the decree. While it may be clear that the controversy between the railroad use and the public use presents a case for equitable cognizance, it is not perceived that any *private* right of the complainant is involved, neither is it clear how he can stand upon or assert the public right.

The complainant's private rights are greatly curtailed by the fact that Hart, who was a common grantor and source of title, conveyed Seventh street, *eo nomine,* to the railroad company,

Davis *v.* Cressman.

which thereby took a fee that destroyed the presumption that Hart's abutting property ran to the centre of the street. To this abutting property the complainant succeeded. It is, therefore, difficult to find in it any *private* right to question the railroad use. If, on the contrary, the complainant must stand on the public right, it is not seen how that is drawn in question in a suit to which no one representing the public or even the municipality is a party. In accordance with these views, I vote to affirm this decree, and am authorized by Messrs. Justices Dixon and Collins to say that their votes rest upon a·similar view.

*For affirmance*—Depue, Van Syckel, Dixon, Garrison, Lippincott, Gummere, Ludlow, Collins, Bogert, Nixon, Hendrickson, Adams, Vredenburgh—13.

*For reversal*—None.