J. M. Lehmann Company, Inc., complainant,

*v.*

S. B. Penick Company, Inc., defendant.

[Decided October 29th, 1946.]

*Messrs. Breslin & Breslin,* for the complainant.

*Messrs. Carpenter, Gilmour & Dwyer,* for the defendant.

Egan, V. C.

The complainant has been engaged in the operation of a manufacturing plant in Lyndhurst, New Jersey, for approximately twenty-seven years. It occupies a tract of land adjacent to land owned by the defendant on which the latter operates an industrial plant for the manufactuer of botanical drugs. The defendant's land lies between the westerly boundary line of complainant's land, and the easterly side of an alleged public street called Chase Avenue. On the westerly side of this alleged avenue defendant owns lands on which there are a number of buildings.

The bill, among other things, alleges that the manufacturing process in which the defendant is engaged, is hazardous and may give rise to explosions and fires; that the defendant

has commenced the construction of buildings which encroach on, obstruct and occupy the avenue aforesaid; that the defendant has erected a wire fence which prevents access to that avenue; that the buildings now under construction by the defendant, and other buildings located on its premises, together with the combustible and explosive chemicals used by it constitute a fire hazard; that the obstruction by the defendant of the avenue aforesaid deprives complainant of a fire break and prevents it from effectually fighting any fire which might take place either in its own building or to prevent the spread of fire from the defendant's buildings; in consequence, it suffers substantial and irreparable damage beyond that suffered by the public at large, since it is the only property owner in the immediate vicinity of the said avenue other than the defendant. It seeks to enjoin the defendant from building on the avenue aforesaid and from continuing to obstruct it.

The defendant claims to be the owner of the strip of land which complainant refers to as Chase Avenue; and it denies that the avenue has ever been used as a public thoroughfare, or declared to be such by the governing authorities. It asserts that the structures and obstructions were placed on the strip of land, called Chase Avenue, many years ago; that such land has been closed to traffic, or the passage of vehicles before and at the time the complainant acquired title to its premises; that two of the buildings which complainant charges as being obstructions were completed before the end of 1941, and that the third was completed during the year 1945, before the filing of the complaint; that the complainant observed such buildings being constructed and made no protest thereof to the defendant until after two of the buildings had been completed, and until the third was substantially finished; that all of the buildings in question have been inspected and approved by the municipal building and fire inspectors; that there is no fire hazard incident to the operations conducted by the defendant on its premises, or with respect to the structures it has erected thereon; and it charges that the complainant does not own any land abutting on the strip of land referred to as Chase Avenue; suffers no

private, direct, material, irreparable, or any other damage beyond that suffered by the public at large by reason of the structures so erected; and that the public does not suffer any damage by reason thereof.

The defendant acquired the lands and premises in question on December 29th, 1937, from the United Cork Company. They are bounded on the north by New York Avenue, on the east by the premises of complainant, on the south by the right of way of the Delaware, Lackawanna and Western Railroad Co., and on the west by Grant Avenue. They embrace about seven acres. The northerly and southerly boundary lines are 541 feet in length, and the easterly and westerly boundary lines are 486.23 and 536 feet in length, respectively.

The United Cork Company developed the property in the year 1913. It erected thereon a number of buildings, storage warehouses and sheds across and within the avenue referred to. The buildings which had been erected at the easterly end of the property nearest to the complainant's premises were destroyed by fire in 1934. Their foundations which extend across and within the avenue still remain.

Chase Avenue appears on a map of property of Pauline Furman filed in April, 1909. The map shows the avenue as running southerly from New York Avenue to the line of the right of way of the D., L. and W. R. R. Co. The easterly line of this street lies 72 feet 4 inches from the easterly line of the defendant's premises. While the filing of the map would indicate a dedication of the avenue, still the township never accepted it. It does not appear that the avenue has ever been devoted to public use, or to have been used by the public.

From the time that the United Cork Company acquired title to the premises now held by the defendant as aforesaid, it was enclosed on all four sides by a board fence. This fence was replaced by a wire fence three or four years after the defendant took possession thereof. There was no opening in either of these fences from New York Avenue into Chase Avenue on the northerly end, nor at its southerly end at the right of way of the railroad. At the latter point it was crossed by concrete foundations and buildings of the Cork

Company from 1913 to 1937, when the defendant became the owner of the premises. In addition to the Cork Company's buildings, the defendant erected others among which are structures, Nos. 10, 11a, and 11. The permit for the construction of the buildings Nos. 10 and 11a contained no reservations of construction on the alleged avenue in favor of the township. However, in the permit for the construction of the building No. 11, a reservation was made.

The defendant is engaged in the milling of leaves, herbs and roots, and to the ultimate processes for obtaining pharmaceutical extracts and insecticides. These extracts are achieved through processing with water and solvents, including alcohol, pentane, benzol and ether. The testimony shows that pentane is a petroleum distillate, whose properties are almost identical with gasoline. It is stored by the defendant in underground tanks and operated through a closed system. Approximately 8,000 gallons of pentane, 500 gallons of benzol and 300 gallons of ether are on the premises from day to day for extract purposes.

The defendant's operations conform with approved practice and methods, and are subject to municipal authority and approval. They are performed in brick buildings which appear to be fully sprinkled. Precautions against fire include adequate hydrants, fire hose, fire extinguishers, a modern fire fighting truck, and a volunteer fire department, which undergoes drills at least once a month.

The defendant's storage building No. 11 is about 50 feet from the nearest building of the complainant. The milling and extract buildings are at the westerly end of defendant's property, approximately a few hundred feet from complainant's plant.

There is no evidence of escaping pentane fumes. Lucas, the defendant's superintendent, testified that the pentane loss is one and one-half per cent. in winter and two per cent. in summer. However, complainant's expert, testified to a loss of five to six per cent. in a comparable plant as normal. In the seven years of operation of the plant by the defendant, there have been no fires or explosions. In the circumstances, I find the hazard is negligible.

The deed under which the defendant acquired title contains a recital that the conveyance is subject to "easement, if any, of Chase Avenue as a public street." The recital does not establish Chase Avenue as a public street. The record shows that the township on May 14th, 1906, adopted an ordinance establishing the grade of Chase Avenue from Valley Brook Avenue to the D., L. & W. R. R. Co. right of way. It is conceded that this portion of Chase Avenue was accepted as a public right of way. The portion of Chase Avenue which appears not to have been accepted or devoted to public use lies to the north of the right of way of the D., L. & W. R. R. Co. and south of New York Avenue, within the defendant's enclosure.

To sustain its contention that Chase Avenue is a public street complainant offers two maps, one hereinbefore referred to, filed April, 1909, and another filed on November 21st, 1848, which is known as Map of "Kingsland Manor North Section," on which maps Chase Avenue is laid out. The filing of these maps amounts to a dedication of the avenue only. Until there is an acceptance of a dedicated street by some municipal act or public usage, the public acquires no rights therein. *Hercules Trust Estate* v. *Gauzzi,* 117 *N. J. Eq.* 565; 117 *Atl. Rep.* 99.

See *R. S.* 46:23–8, which reads as follows:

"The approval of any map of lands in the manner provided by this chapter by the governing body of a municipality having control of the streets and highways of the municipality shall in nowise be construed as an acceptance of any road, street or highway indicated thereon; nor shall any such approval in any way obligate this state, or any county or municipality therein to maintain or exercise jurisdiction over such roads, streets or highways."

See *New York and Long Branch Railroad Co.* v. *South Amboy,* 57 *N. J. Law* 252; 30 *Atl. Rep.* 628; *Darling* v. *Mayor, &c., of Jersey City,* 73 *N. J. Eq.* 318; 67 *Atl. Rep.* 709; *United New Jersey Railroad and Canal Co.* v. *Crucible Steel Company of America,* 85 *N. J. Eq.* 7; 95 *Atl. Rep.* 243; *affirmed,* 86 *N. J. Eq.* 258; 98 *Atl. Rep.* 1087.

On or about September 29th, 1945, the complainant made application to the Board of Commissioners of Lyndhurst to

open the street for public use. That application implies that there had been no acceptance of the street as a public right of way by the local government. The commissioners did not grant the application.

When the complainant erected its buildings on the lands adjacent to the lands of the United Cork Company in 1919, the latter's buildings had already been erected upon the alleged street. For approximately twenty-five years thereof, the complainant made no objection to these alleged encroachments, and asserted no right of user. This court still adheres to the principle declared in the time honored maxim that "Equity aids the vigilant and not those who slumber on their rights."

Since the westerly line of complainant's land lies approximately 72 feet from the easterly line of Chase Avenue, it cannot be considered an abutting owner. Under the circumstances, the complainant not being an abutting owner would not under our decisions be entitled to the equitable relief it seeks in this action. *Morris & Essex Railroad Co.* v. *Prudden,* 20 *N. J. Eq.* 530; *H. B. Anthony Shoe Co.* v. *West Jersey Railroad Co.,* 57 *N. J. Eq.* 607; 42 *Atl. Rep.* 279; *United New Jersey Railroad and Canal Co.* v. *Crucible Steel Company of America, supra; Morrison* v. *Standard Oil Company of New Jersey,* 105 *N. J. Eq.* 104; 147 *Atl. Rep.* 161; *Con Realty Co.* v. *Ellenstein,* 125 *N. J. Law* 196; 14 *Atl. Rep. (2d)* 544.

It is conceded that the buildings Nos. 10 and 11a which encroach upon the alleged public avenue were erected in 1940 and 1941 at a cost of $2,000 and $5,000, respectively. They were erected without objection on the part of the complainant, and no action with respect to the alleged encroachment was instituted until December 15th, 1945, when building No. 11 was completed at an expense of $10,000. I feel that the complainant's attitude in this situation estops it from complaining. *O'Connell* v. *Holton,* 91 *N. J. Eq.* 4; 107 *Atl. Rep.* 37.

While the complainant argues that the defendant has created a private and public nuisance, there appears to be no such proof, and I do not find that the complainant has suf-

fered any irreparable loss at the hands of the defendant. It is declared in *Vaszil* v. *Molnar,* 133 *N. J. Eq.* 577; 33 *Atl. Rep.* (2d) 743, that where an injunction is sought to restrain an action or conduct which will create or result in a nuisance, the proofs must disclose that the apprehension is well grounded; that the danger is real and immediate, and that the injury is material. The evidence here submitted by the complainant falls short of these requirements.

An injunction will not be granted to restrain a business lawful in itself unless a clear case of nuisance is established, and the evidence thereof must be convincing and free from contradiction. *Stohf* v. *Passaic Piece Dye Works,* 108 *N. J. Eq.* 46; 153 *Atl. Rep.* 707; *Hey* v. *Seifert & Baime, Inc.,* 95 *N. J. Eq.* 502; 123 *Atl. Rep.* 106.

The evidence here submitted shows that the defendant is operating its plant carefully. It has adopted modern methods and required safeguards in the conduct of its business.

Under the circumstances, I feel that the bill should be dismissed, and shall advise an order to that effect.