## THE CITY OF VENICE

*v.*

## THE MADISON COUNTY FERRY COMPANY.

*Opinion filed June 23, 1905—Rehearing denied October 5, 1905.*

1. DEDICATION—*city has no right in streets shown on plat until dedication is accepted.* A municipal corporation acquires no rights in streets, alleys or public grounds shown upon a plat until it has accepted the dedication.

2. SAME—*what not an acceptance of dedication.* The fact that a platted tract was included within the territorial limits of the village upon its incorporation does not amount to an acceptance of the dedication of the streets, alleys and public grounds shown on map.

3. SAME—*owner may recall dedication if not accepted within a reasonable time.* Where a dedication of streets and alleys is offered before the municipal corporation is organized, the fee remains in abeyance until the municipality has corporate existence to accept or reject the offer, but the owner may withdraw the dedication if it is not accepted within a reasonable time.

APPEAL from the Circuit Court of Madison county; the Hon. CHARLES T. MOORE, Judge, presiding.

TERRY & WILLIAMSON, for appellant.

TRAVOUS, WARNOCK & BURROUGHS, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

A bill in chancery was filed by the appellant city against the appellee ferry company, and the same was afterwards consolidated with a bill in chancery subsequently filed by the appellee ferry company against the appellant city and D. R. Francis, Jr., for partition of certain lands. A decree was rendered in the consolidated cause, from which the appellant city has prosecuted this appeal, all other parties to the two causes being satisfied with the decree as rendered.

The controversy brought into this court by the appeal relates to the ownership of certain territory which, as platted in the year 1841, constituted the streets, alleys and public

grounds of what is called by the parties "Old Venice," in Madison county, Illinois. The village of Venice was incorporated in 1873, (the date is not more specifically disclosed by the record,) and the appellant city is the successor of the village. The appellant city claimed that the plat of Old Venice was in 1841 executed and recorded in accordance with the statute of the State, and that such execution and recording of the plat constituted an offer to dedicate the streets, alleys and public grounds shown upon the plat; that as there was then no municipality having corporate existence, the fee to the streets, alleys and public grounds remained in abeyance, subject to vest in the corporation as soon as created; that the village of Venice was organized in 1873, and that it accepted the dedication, and that thereby the title to such streets, alleys and public grounds then vested in the village, and passed to and is now vested in the appellant city of Venice in trust for the use of the public. The appellee the ferry company, and D. R. Francis, Jr., claimed to be the owners, as tenants in common, of the land so shown upon the plat of Old Venice as streets, alleys and public grounds, and their contention was sustained by the chancellor on a hearing.

The chancellor found and recited the following facts in the decree:

"The court finds that on the 9th day of November, A. D. 1841, Charles F. Stamps and Cornelius Campbell, who the court finds were the owners and proprietors of certain premises described in the pleadings, attempted to plat the same into proposed lots, blocks, streets, alleys and public grounds, which said plat was known as 'Old Venice,' and was filed for record in recorder's office of Madison county, Illinois, on the 22d day of November, A. D. 1841, and duly recorded in book 14, page 595. The court further finds that afterwards, to-wit, on or about the......day of......A. D. 1873, the said city of Venice, then the village of Venice, was duly incorporated under the laws of the State of Illinois, and that the said city of Venice now claims to be the owner in fee

simple of all the alleged streets, alleys and public grounds attempted to be designated in said plat of Old Venice, but the court finds the facts to be that said plat was never accepted nor in any way recognized by the said city of Venice or the said village of Venice, nor were the proposed streets, alleys and public grounds attempted to be designated thereon, accepted in any way by said city or village. The court further finds the fact to be that prior to the incorporation of the village (now city) of Venice, as aforesaid, the proposed streets, alleys and public grounds represented on said plat had never been used, opened or traveled, or in any way improved or recognized as such, by any one, nor had they ever been staked out or designated upon the ground in any manner, but, on the contrary, the court finds that the lands embraced within said plat of Old Venice, including the proposed streets, alleys and public grounds therein represented, during all of said time were allowed to be and remain partly in cultivation as acre property, when not overflowed by the waters of the Mississippi river, and partly in willows and underbrush, and unfit even for cultivation or public travel. The court further finds the fact to be that all the land embraced within said plat is subject to overflow by the waters of said Mississippi river, the largest part of which said land the court finds has heretofore been overflowed annually. The court further finds the fact to be that at the time of the incorporation of the said village of Venice a large part of said proposed Old Venice, to-wit, more than one-half thereof, had been washed away by the waters of said Mississippi river, and that the east bank of said river was several hundred feet east of what was attempted to be designated on said plat as Water street, and that the balance or remainder of said proposed Old Venice was then partly in cultivation and partly in willows and underbrush, and that none of the proposed streets and alleys or the public grounds as attempted to be represented upon said plat were then opened or being used or traveled as such by the public, nor were they, or any of them, designated in

any way on the ground or capable of being physically located. The court further finds that since the incorporation of said village (now city) of Venice the waters of the said Mississippi river have gradually receded, and accretions have formed from time to time along, over and upon that part of said Old Venice, as proposed by said plat, which has previously been washed away, until the east bank of said Mississippi river is now several hundred feet west of the west line of said proposed Water street; and the court further finds that as said water receded and accretions formed, as aforesaid, the said village (now city) of Venice never in any way opened, improved or used the proposed streets and alleys or the public square as proposed by said plat, or did anything by which said proposed streets and alleys and public grounds could be designated or located upon the grounds; and the court further finds that since the incorporation of said village of Venice the larger part of the lands attempted to be shown on said plat, including the proposed streets, alleys and public grounds, have been allowed to grow up in willows, and that in many places over and upon which said pretended streets and alleys passed, said land has been so low and swampy and so grown up in willows that it was and has been physically impossible for any one to travel or pass thereover, and that the remaining portion of said Old Venice, as proposed upon said plat, has from time to time since the incorporation of said village been mostly in cultivation as farm property, and that at no time since the incorporation of said village have the pretended streets and alleys or the public grounds as proposed in said plat been used, opened, laid out, worked or improved as such by said village of Venice or been traveled by the public; and the court further finds that whatever travel there may have been by private parties since the incorporation of said village, over and upon the land attempted to be embraced within said plat, has at no time been confined to the pretended streets and alleys attempted to be designated upon said plat or to any particular or well defined road or

street, but that the same has from time to time been promiscuously traveled by private parties, regardless of said proposed streets, alleys or public grounds, and without any regard whatever to them or their proposed location. The court further finds the fact to be that the defendant, the city of Venice, has no interest, right or title of any kind whatever in and to the proposed streets, alleys and public grounds proposed and attempted to be shown by said plat, nor has the said city of Venice any right, title or interest of any kind whatsoever in and to any of the real estate herein described, except. as to so much of said tract No. 2 hereinbefore described, extending two hundred and twenty-five feet westerly from the center of Dry slough, which is now used and occupied as a public highway known as the 'National way,' as aforesaid, as to which the complainant the Madison County Ferry Company and the defendant D. R. Francis, Jr., own the fee in the proportions aforesaid, subject to an easement in the public to so occupy and use the same for public travel as a highway, as aforesaid."

The chancellor also made other findings to the effect that the plat of Old Venice had been legally vacated by the proprietors and owners of all the lots shown on the plat, and that therefore the appellant city had no title thereto; but in the view we have taken of the case on other branches appearing in the findings, it is not necessary to lengthen this opinion by reference to and consideration of such last mentioned finding. The decree, in pursuance of these findings, was adverse to the contentions of the appellant city, and it has appealed from that portion of the decree.

It is familiar law that a municipality acquires no right in the streets, alleys or public grounds shown on a plat unless it has accepted the dedication. The chancellor, on facts recited in the decree, found the dedication of the streets, alleys and public grounds of Old Venice had never been accepted by the village of Venice or the appellant city. The appellant insists that this finding is so manifestly against the weight

of the testimony that this court should reject it. We have carefully read what counsel for appellant have, in their brief, urged for consideration on this point. They first state "that the record shows that whenever there was any need or necessity for the city to act with reference to this plat and its property it has always done so;" and this is not necessarily inconsistent with the insistence of counsel for the appellee that the municipality has never done anything to show that it had accepted the dedication. Counsel for the appellant insist the village acted "when it incorporated as a city, and included the lands of Old Venice to the Mississippi river within its boundaries." But we declared in *Russell* v. *Chicago and Milwaukee Electric Railway Co.* 205 Ill. 155, that the inclusion within the limits of a municipality of territory covered by a plat was not an acceptance of the streets, etc., shown upon the plat.

While it is the doctrine that if a dedication of streets and alleys is offered before there is a municipality incorporated and empowered to accept or reject the tender, the fee to the streets and alleys shown on the plat remains in abeyance until a municipality shall have corporate existence, still it is also a well settled principle that an acceptance must be made within a reasonable time after the dedication is proffered, and that the owner may recall the dedication if not accepted within a reasonable time. (Elliott on Roads and Streets, sec. 155; 9 Am. & Eng. Ency. of Law,—2d ed.—50.) We have not been able to ascertain from the record when the village of Venice was re-incorporated as a city, but the village was not incorporated until 1873. The plat of Old Venice was made and recorded in 1841,—a period of thirty-two years before the village was organized. During that long period the proprietors of the plat, and those who succeeded them in title, evinced very clearly that they had withdrawn the dedication. When the plat of Old Venice was executed the National way or road was in use by the general public as a means of reaching the ferry landing, and the National

way was platted as one of the streets of Old Venice. In 1858, fifteen years before the incorporation of the village of Venice, the ferry landing was moved south along the bank of the river to a point entirely beyond the limits of the territory platted as Old Venice. The National way in the platted portion of Old Venice was then abandoned and the public traveled to the new ferry landing by another route not within the limits of Old Venice. The National way within the limits of the territory platted as Old Venice was used as a road afterwards, but only for a period of two weeks, while, owing to low water, the ferry boats for that period of time temporarily landed near where the National way had formerly reached the banks of the river. The ferry boats within about two weeks landed at the lower landing, and since then the only travel through Old Venice has been by John Byrnes, who owned a farm north of the Merchants' bridge, and members of his family, and tenants of the ferry company, and teamsters having occasion to haul sand from the river. The travel by these parties was by the most convenient routes and entirely without reference to any of the streets in Old Venice. The road used by Byrnes and the tenants of the ferry company crossed the slough at the National way and entered Old Venice somewhere in block 2, and ran northerly along or near a small levee, without reference to any streets whatever. So far as we can discover from the testimony, when the ferry landing was moved, in 1858, there was but a single house within the limits of Old Venice. It was an old brick building, which we think it most probable, from the testimony, had been constructed before the town of Old Venice was platted. This building was abandoned when the ferry landing was moved and was not again occupied, but fell into decay and ruins. Long prior to the incorporation of the village of Venice, in 1873, the territory embraced in the plat of Old Venice had been conveyed and re-conveyed by its various owners in tracts and parcels described by metes and bounds. Such of the land as was susceptible of tillage was

being cultivated as farm lands at the time of the incorpora-
tion of the village of Venice, and had been so in use for agri-
cultural purposes for many years before and without any
reference to the streets or alleys of Old Venice. Houses
which had been built for tenants years before the incorpora-
tion of the village stood on the ground now sought to be de-
clared to be streets and alleys. The owners during this long
series of years clearly acted upon the theory that the use of
the lands as a village had been abandoned and that the pro-
posed dedication of streets and alleys had been abrogated
and withdrawn. The territory was subject to the annual
overflow of the Mississippi river, which at times washed
away parts of grounds which had been platted as streets and
alleys. On higher lands, farther from the river and sepa-
rated from the territory that had been platted as Old Venice
by what is known as "Kerr slough," houses were built and a
small village grew up, and in 1873 it constituted the inhab-
ited part of the territory that was embraced within the vil-
lage of Venice. At that time the territory covered by the
plat of Old Venice was cultivated fields, where cultivation
was possible, and the remainder was sand banks and sloughs,
overgrown with willows, and such has practically remained
its condition to the present time.

As indicating an acceptance of the streets and alleys of
Old Venice by the authorities of the appellant, it is urged
it was proven that after the incorporation of the village its
officials went on the public streets and alleys of Old Venice,
and the accretions thereto, and took sand therefrom to build
up the streets in the new village. The evidence upon that
point was, that the sand was taken without regard to street
and lot lines, and outside of the limits of Old Venice as
well as within the boundaries thereof, and that prior to the
year 1892 the village accounted to the appellee ferry com-
pany for the sand so taken by it and paid the ferry company
for it. In 1892 the territory of the new village was inun-
dated by the waters of the Mississippi river and much dam-

age was thereby inflicted, and it appeared from the testimony that in consideration of this calamity the ferry company permitted the village to take the sand without exacting pay therefor.

It is urged as an act of acceptance that the appellant city caused the streets and alleys of Old Venice to be surveyed. But this was not done until about 1896,—a period of more than fifty-five years after the execution of the plat of Old Venice and more than twenty-three years after the organization and incorporation of the village, and long after the dedication had been abrogated and revoked.

The appellant city built a pest house on territory platted as the public square of Old Venice. But that cannot serve as an indication of acceptance of the dedication. The pest house was not built until after the institution of this litigation, and the evidence tends to show that it was built there with the consent of the appellee company. The evidence shows, also, that the site was selected, not because it had been platted as the public square, but because it was the "most unfrequented place on suitable ground for it," as testified to by the mayor of the city.

Many questions other than that of acceptance of the dedication are argued, but as all other parties to the litigation except the appellant city are satisfied with the decree entered by the trial court, and as the only interest which the city has in the subject matter of the litigation is its alleged claim of title to the territory which was platted as the streets, alleys and public grounds of Old Venice, and as its claim of title cannot be maintained if, as we find the facts to be, the proffered dedication of the streets and alleys made in 1841 was not accepted but was revoked years before the village of Venice had corporate existence, it is unnecessary to lengthen this opinion by the discussion of such other questions. The finding of the chancellor that the proffered dedication was not accepted is amply supported by the proof, and this finding alone warrants the decree. Furthermore, the evidence

216—23

abundantly established the fact to be, that during the many years which elapsed after the making of the plat of Old Venice and before the incorporation of the village of Venice, the owners of the territory embraced within the plat of Old Venice revoked, as they had lawful right to do, the dedication proffered by the makers of the plat in 1841.

The decree· is affirmed.                    · *Decree affirmed.*