ELMER A. DARLING

v.

MAYOR AND ALDERMEN OF JERSEY CITY.

[Submitted August 7th, 1907.   Decided August 27th, 1907.]

1. Complainant was the owner of a tract of land in defendant city, which had its surveyor make an official block and lot map of the city, and thereafter adopted the map so made.   Complainant subsequently platted the land and sold a number of lots, some of which fronted on streets delineated on the official map, which was referred to in the deeds.—*Held*, that neither the making nor the adoption of the map was sufficient to evidence an acceptance of a subsequent tender of dedication, if any, of the streets.

. 2. While a tender of a dedication of streets and alleys on platted land cannot be revoked, but may be accepted by the municipality at any time, yet, until acceptance, the fee title and control of the property remain in the dedicator.

3. Until a tender of a dedication of streets on platted property is accepted by the city, the latter has no right to interfere with the use by the dedicator of land lying within the lines of the streets.

4. The burden of proving acceptance of a dedication of streets on platted land is on a city alleging it.

5. Where the owner of platted land sought to enjoin a city from interfering with his use of land lying within the lines of streets laid out on a map of the property, an answer, alleging a tender of dedication of the streets and acceptance by defendant, and setting out the acts of acceptance on which defendant relied, did not, of itself, operate as an acceptance of the alleged tender.

On final hearing.   On bill, answer, replication and proofs.

*Mr. John R. Hardin* and *Mr. Henry V. Condict,* for the complainant.

*Mr. J. Merritt Lane,* for the defendant.

HOWELL, V. C.

The complainant files his bill to enjoin the city of Jersey City from interfering with the erection, by him, of dwelling-

houses on seven plots of land lying within the limits of that municipality. The city claims that the lands in question were dedicated by the complainant to public uses as public highways, that such dedication has been accepted by it, and that therefore the complainant cannot lawfully encumber the land with dwelling-houses, or use it at this time in any manner inconsistent with its use as a public highway.

The facts are these: In 1889 the complainant became the owner in fee of a large tract of land in the city of Jersey City, which embraces the land in question. At that time it was farming land, over and across which two streets had been laid out and graded. These streets were Duncan avenue and Gautier avenue. Three of the plots of land in question represent twelve city lots fronting on Duncan avenue and an intermediate street called Condict street; two others represent eight city lots lying between Condict street and Gautier avenue, and the remaining two represent four city lots fronting on Gautier avenue. The property was used as a farm until 1895, about which time the complainant plotted the land into lots and streets and began selling the same off in small parcels. It now appears that a considerable portion of the original tract has been sold by the complainant to a large number of people.

In 1894 the city of Jersey City directed the city surveyor, Mr. Fowler, to construct an official block and lot map of the city. This map, when finished, was in the same year ratified and adopted by the various city boards, and it was filed with the custodian of the map department connected with the tax commissioner's office, and remains there, a public record of the city of Jersey City, and is now called "Fowler's Official Assessment Map of Jersey City of 1894."

Of all the deeds of conveyance made by the complainant for lots out of this original tract twelve in number are for lands fronting on streets which are delineated on the Fowler official assessment map, and these twelve refer to this map in the following, or like, words, at the end of the particular description of the lots conveyed:

"Being known as lot numbered six (6) in city block No.

233-1661, on the official assessment map of Jersey City," using the appropriate descriptive numbers in each case.

The complainant caused a map of his large tract of land to be made, a copy of which is annexed to the bill of complaint. It does not distinctly appear by the evidence when this map was made, but it was probably made about the same time as the Fowler official assessment map, and its lines, so far as the disputed property is concerned, are co-terminous with the lines shown on the Fowler map.

The Fowler map shows that three of the disputed plots lie within the boundaries of Olean avenue, one within the boundaries of Belvidere avenue and three others within the boundaries of Nunda avenue, and to be respectively parts of these streets.

Later on the complainant entered into a contract to sell some portion of the land in dispute to one Thomas Hill. He objected to the title on the ground that Olean avenue passed through the property for which he had contracted. Thereupon the complainant, conceiving that there might be some force in Mr. Hill's objection to the title, filed a bill in this court under the act of 1870 to quiet the title to the seven tracts in dispute. The defendants were the city of Jersey City, the twelve grantees whose deeds referred to the Fowler official assessment map, and other persons who it was supposed might have an interest There was neither appearance nor answer in that suit, and on February 3d, 1906, the bill was taken as confessed as against all the defendants, and on the same day, and by the same decree, it was adjudged and decreed by this court that the defendants, and each of them, had no estate, interest in or encumbrance on any part or parcel of said lands and premises, and that in respect to said lands and premises so far as related to any claim thereon by or on behalf of any of the said defendants, the title of the complainant in and to the same and every part thereof was thereby determined, fixed and settled and declared to be good.

In the summer of 1907 the complainant began the erection of a row of houses on the lots fronting on Duncan avenue. These houses, or some of them, cover some portion of three of the lots in question. The city of Jersey City, conceiving that the com-

plainant was trespassing upon dedicated and accepted lands, by its officers, interfered with the work of construction, and thereupon the complainant brings this suit to enjoin the city from interfering with the work. The city, by its answer, admits the commencement of the construction of the houses, and that the proper officers of the city gave instructions that the work should be stopped until the rights of the public in the street should be determined. It alleges that the property upon which the houses mentioned are being constructed are public streets, and that the complainant has no right or title therein.

The complainant claims to own the land. He alleges that he has not dedicated it, but that, if it should be found that there had been a dedication, then that there was no acceptance, and that the decree in the suit to quiet title cut out the rights of the public to whose uses the dedication was, and that he, therefore, should not be interfered with by the building department of the city.

The city, on the other hand, claims that by virtue of the reference contained in the twelve deeds to the Fowler official map there was a tender of dedication by the complainant. The only *acceptance* alleged is the use of the street by the public and the adoption of the Fowler official assessment map of 1894 by the board of street and water commissioners and by the commissioners of assessment. The making and adoption of this map was prior to the making of the deeds which refer to it, and, while this situation may be evidence of a tender of dedication, it is impossible for me to understand how the making and approval of the map can be any evidence of an *acceptance* of the later so-called dedication. Neither do I find elsewhere in the case any conclusive evidence of any acceptance of any supposed dedication of the lots in question as public highways of the city. The answer puts it on the making of the deeds, the use of the street by the public, the adoption of the map, and the non-taxation of the property; but, in my opinion, none of these things is sufficient to evidence an *acceptance,* nor will all of them together have that effect.

Suppose, for the sake of the argument, that the complainant did dedicate these lands to public uses and that such dedication

has not been accepted, what, then, is the situation? I understand the law to be that a tender of a dedication cannot be revoked (*Hohokus* v. *Erie Railroad, 65 N. J. Law (36 Vr.) 353)*; that it may be accepted by the municipality at any time, but that until the tender has been accepted and the dedication has ripened into a public right and a public obligation the fee-simple title and the control of the property remain in the dedicator and he may use it as he will, provided he does not in any way interfere with the right of the public to accept the dedication whenever it sees fit to do so. *De Groot* v. *Jersey City, 55 N. J. Law (26 Vr.) 120; Pease* v. *Traction Company, 69 N. J. Law (40 Vr.) 165.*

The facts above detailed raise several new and interesting questions, all of which are questions that should be heard and decided according to the ordinary course of the common law. Such are (1) Was there a dedication? (2) Was there an acceptance? (3) What is the effect of the decree to quiet title upon the rights of "the public?" (4) What is the nature and scope of the statute of 1870 to quiet the title, and does it include within its purview suits in which the mere inchoate right of the public may be concerned? (5) If the complainant cannot revoke the supposed dedication after it has once been tendered, can he call in the aid of the court to do by decree what he is otherwise prohibited from doing, or what is the difference between his application to the court to restore his land to him, and an attempt to retract his dedication in any other way?

There may be other questions, but these should not be passed upon by this court; they are practically questions of title. In *Clark* v. *Elizabeth, 40 N. J. Law (11 Vr.) 172,* the question of dedication came before the law court on an appeal from the award of commissioners. When the city of Jersey City shall open and regulate the streets, which it is claimed include the lands in dispute, the points now raised can be litigated before the proper tribunal.

It is quite plain, therefore, in any aspect of the case, that the injunction prayed for must issue. If the complainant owns the land in fee-simple there is no public right in it. Then certainly the city of Jersey City has no authority to interfere

with the complainant's use of his own land. If there has been a dedication and no acceptance the case stands much in the same way. The inchoate and uncertain thing which may ripen, but has not yet ripened into a public right, will not justify an interference with the private right of present possession. The burden of convincing the court of the solidity of the city's assertion of title is on the city; title in the complainant once fixed by the conveyance to him must be presumed to continue in him until the contrary shall be shown affirmatively.

It may be said that the claim made by the city in its answer is equivalent to or operates as an acceptance of the supposed tender of dedication, just as the bringing of an action of ejectment by a municipality would amount to an acceptance, but in my opinion it is not so. In the first place, this suit must be heard and decided as of the date of its beginning before the answer was put in; and in the second place, the answer sets out the acts of acceptance on which it now relies. These acts I have already alluded to, and I have ventured the opinion that they are not sufficient, in themselves, to charge either the landowner or the municipality.