WILLIAM H. CARTER and CORDELIA A. CARTER v. IRA BARKLEY, ET AL., Appellants, ELIZABETH BARKLEY, Appellant, v. HENRY KRUSE, Sheriff, et al.

**Highways:** DEDICATION: ACCEPTANCE: EVIDENCE. Any act clearly
1 indicating an intention of the owner to set apart lands for the use of the public as a highway constitutes a dedication; but mere dedication is not sufficient to establish a highway,

there must also be an acceptance by the public, and this may be proved by acts showing an intention of the public to use the same as a highway. Evidence held to show dedication and acceptance.

Highways: ABANDONMENT. Where the public has ceased to use a way, the fences inclosing the same have been removed, a single fence constructed on the boundary line and the road is thereafter used only by the adjoining owners of the land, such facts show an abandonment of the same as a public highway.

Private roads: CONDEMNATION. Where parties have either a public or private way to their land they cannot maintain a proceeding under the statute to condemn a way over the land of another; but where plaintiff had no public way and defendant did not admit his right to an unobstructed private road and fenced up the boundary line, putting in a number of gates through which plaintiff had to pass, he was entitled to condemn land for a private way.

*Appeal from Jackson District Court.*— HON. A. J. HOUSE, Judge.

WEDNESDAY, FEBRUARY, 19, 1908.

THIS is a proceeding for the establishment of a highway by condemnation. The highway was established as prayed, and the defendants appeal.— *Affirmed.*

*C. M. Thomas,* for appellant.

*John Sagers,* for appellee.

SHERWIN, J.—William H. Carter and Cordelia A. Carter, his wife, are the owners of land in the southeast corner of the southwest quarter of section 23, township 85, range 2, in Jackson county. The defendants, Elizabeth Barkley, Ira Barkley, *et al.,* are the owners of land in the southwest corner of the southeast quarter of the same section, township, and range. In December, 1906, Carter and his wife commenced proceedings for the condemnation of a public highway along the south line of the defendants' land, alleging that the same was necessary to give them a

way out to the public highway, and that they were unable
to buy or agree on a price for the location of a road south
of the defendants' land.  In April, 1907, a sheriff's jury
viewed the premises and fixed the damages for the location
of the road.  The sum so assessed was paid to the sheriff for
the use of the owners of the land, and the road was estab-
lished.  Later an appeal was taken to the district court, and
about the same time Elizabeth Barkley commenced an action
against the sheriff and the Carters, asking that an injunc-
tion issue restraining them from opening the road in ques-
tion.  These two cases were afterwards consolidated and
tried as one on the same evidence, and are here in the same
way for disposition on this appeal.

The only question for determination here is whether
the plaintiffs, the Carters, had either a public or private way
from their land at the time this proceeding was commenced.

1. HIGHWAYS:  It is claimed on the part of the appellants
   dedication:
   acceptance:  that they had either one or the other, and that
   evidence:
they have no right to have a highway established along the
south line of their land under the provisions of section 2028
of the Code.  That section provides: " Any person . . .
owning . . . any land not having a public or private way
thereto may have a public way . . . over the land of an-
other. . . ."  The land owned by these various parties
has been occupied by them and their grantors for fifty or
sixty years.  The testimony shows that some thirty or forty
years before the trial of this case, there was a north and south
way between the lands owned by these parties.  That at one
time after the use of this way was begun fences were built on
both sides of the way, and that they were maintained in
that condition for some years.  There is testimony tending
to show that at that time the way was used to some extent
by the public in going to what was known as " Slipper's
Mill," which was south thereof on the Maquoketa river.  No
highway was ever located there under the statute, and what-
ever dedication of it there was, was by the acts of the owners

of the land. It may perhaps be said from the record that there was a dedication to public use. It is a familiar rule that no particular form of dedication is necessary, and that any act clearly indicating the intention of the owner to set apart lands for the use of the public as a highway constitutes a sufficient dedication. It is also a familiar rule that a mere dedication of land to such use will not constitute a public highway; that, in addition thereto, there must be an acceptance of the highway by the public, and the acts necessary to show such acceptance are not much more definitely defined than are the acts which will constitute a dedication. It has been held by this court that a continued use of the highway for a period of ten years would sufficiently show an acceptance thereof. We are inclined to the view that years ago there may have been a sufficient dedication and acceptance of the highway in question and a sufficient use thereof to give the public rights which it could not be deprived of by the landowners.

But, however this may be, the evidence is undisputed that some thirty or thirty-five years ago the fences which had theretofore been built on each side of the way were removed and a fence built on the line between the parties then owning the land. It is also shown that this fence was by agreement made a party line fence, that it was kept up by the landowners on both sides thereof, and that it has been continued to the present time, and, so far as the record shows, without any objection on the part of the public. In fact, it quite clearly appears that, after Slipper's Mill on the Maquoketa ceased doing business, a good many years ago, the use of this was very greatly diminished, and that it was in fact used principally by the adjoining owners as a private way, so that, whatever the facts may have been as to the establishment of the public highway there forty or fifty years ago, it clearly appears that it was abandoned by the public, and that, if any way existed there at all thereafter, it was nothing more than a private way.

2. HIGHWAYS: abandonment.

The evidence shows that, after the line fence was built between these parties, the Barkleys fenced their land to the line fence and put in gates or bars wherever these fences existed, so that the plaintiffs' grantors and others who wished to do so could travel along the east side of the north and south fence. There were sometimes as many as four gates to be opened and closed in going from the Carters' to the highway on the north. The evidence also shows, without much dispute, that the way used by Carter was some ten or twelve feet wide, and that the defendants cultivated up to the road. These gates seem to have been put in there by some kind of an agreement between the defendants and the then owners of the Carter land. This was some twenty or thirty years ago. Shortly before this condemnation proceeding was commenced, a tenant of the defendants who was occupying their land refused to permit the plaintiffs to use this way without making compensation therefor. Carter complained of this to Elizabeth Barkley, and she told him that he could use the way until they got the matter settled. Again, she and some of the other defendants stated to Carter that the proper way to adjust the question of a highway there was for him to set his fence back twenty feet and buy a strip twenty feet wide of Campbell, the owner north of him, and that, if he would do so, she would also set her fence back twenty feet and make a highway north and south forty feet wide. None of the defendants, at any time before this proceeding was commenced, admitted that there was a public highway along the line in question, or that the plaintiffs herein had a private way which could be maintained.

It is undoubtedly true that, if the plaintiffs had either a public or a private way to their land, they could not maintain this proceeding; but the statute evidently does not contemplate that the owner who claims to have no way to his land shall be compelled, before inviting the aid of the statute, to try one or more lawsuits for the purpose of finding out

*3. HIGHWAYS: condemnation.*

whether he has a way or not.   The statute, in our judgment, should be construed to mean that, unless a party has a way, either public or private, which is unobstructed and unquestioned, he may institute proceedings under the statute.   If the defendants herein had said to the plaintiffs, " You have a way from your land north, and we do not question your right to use it without the obstruction of gates," a different question would be presented.   But even in their pleadings, the defendants, in a measure, justify the use of the gates in question, and make no suggestion that they will be removed and the way kept open.

Under the circumstances appearing in this record, we are satisfied that the trial court reached the right conclusion in these cases, and they are therefore *affirmed*.