S. T. KIRKLAND, *Appellant*, v. CITY OF TAMPA, *Appellee*.

Opinion filed February 14, 1918.

1. The platting of land leaving spaces for streets, alleys and parks, and the sale of lots according to such plat or plan creates as between the grantor and such purchasers a private right in the latter to have the spaces marked upon the plat as streets, alleys [and parks remain open for ingress and egress, and the uses indicated by the designations, a private right of ingress and egress and light and air; and as to the public it is an offer of dedication of the strips and parcels of land designated on the plat as streets, alleys and parks for that purpose and must be accepted by the public before revocation before the dedication becomes complete.

2. Acceptance of such an offer of dedication may be by formal resolution of the proper authorities or by public user.

3. One who makes a plat of his land showing strips of land for streets and alleys and places for public parks, and who causes the plat to be recorded in the public records of the county where the land lies, and who offers the lots for sale according to such map or plat, thereby makes a tender to the public of

such strips and parcels of land indicated on the plat as streets, alleys and parks for such purpose, and before the public acccepts such offer he may revoke the same.

4. The grantees of one who has made such a tender to the public of land for streets, alleys and parks, to whom the owner has conveyed all the lots embraced in the plat may before the public accepts the tender revoke the same as the original owner may have done?—not decided. But in such case the revocation must appear clearly and conclusively to have been made and the burden of proof in either case is upon the person asserting such revocation.

5. The burden of proving acceptance of an offer to the public to dedicate lands for streets, alleys and parks is upon the county or municipality asserting it.

6. A decree of the Chancellor is presumed to be correct, and when based upon evidence taken before an examiner and reported to the Chancellor will not be disturbed unless an examination of the evidence as disclosed by the records clearly shows the conclusion to have been erroneous.

Appeal from Circuit Court for Hillsborough County, F. M. Robles, Judge.

Decree affirmed.

*Dickenson & Dickenson,* for Appellant;

*Lunsford & DeVane,* for Appellee·

ELLIS, J.—This is an appeal from a final decree dismissing the complainant's bill of complaint and dissolving a temporary injunction against the City of Tampa upon complainant's application restraining the city, its agents, servants and employees from opening a street, alley or roadway across certain lands of the complainant

described in the bill as "Blocks two and three of Gary, Town Subdivision according to map recorded in Plat Book 2 at page 22 of the records of Hillsborough County."

The bill of complaint alleged that the land was in one tract or contiguous body; had been cultivated by complainant for years; was enclosed by a substantial fence, and that the complainant had never donated either directly by deed or gift or indirectly by abandonment to the city any street or roadway through the land; that the City of Tampa was attempting to open a street through the lands without proper procedure and without authority of law.

The answer denied that the city was attempting to open a street through the lands and averred that it intended to open a street north of block two of the Garytown subdivision; that tenth avenue is a public thoroughfare of the City of Tampa and extends from twenty-sixth street to thirtieth street along the northern limits of block two, and does not cross or encroach upon the complainant's land.

It appears from the evidence which was taken by a master and reported to the chancellor that in 1903 Mr. Giddens was the owner of a small tract of land situated beyond the corporate limits of the city of Tampa near a suburb called Garytown. The land is in the form of a parallelogram and lies east of and adjacent to Garytown between Eleventh Avenue on the north and Seventh Avenue or the six mile creek road on the south. The tract of land is five hundred and ninety feet wide and about one thousand feet long. A plat of this tract was made dividing the land into four blocks numbered from one on the north end to four on the south end. The plat was made in 1903 and recorded in the records of Hillsborough county in the clerk's office in May of that year.

The northern boundary line is shown to be Eleventh Avenue and the southern boundary Seventh Avenue. These avenues appear to be open to the eastern side of the subdivision. Tenth Avenue likewise appears to be open to the east side, but the avenues numbered nine and eight appear from the map to terminate at the west boundary of the tract.

In February, 1904, the appelant entered into a contract with the owner of the land for the purchase of blocks numbered one, two and three. At that time these blocks were enclosed by a fence which extended from the north line to the south line across Tenth Avenue both on the west and east sides of the land completely closing the avenue if the same had indeed ever been opened. This enclosure had been erected several years before the plat was made and filed. The complainant below entered into possession of the land, erected a dwelling-house thereon, made other improvements and began the cultivation of the lands and moved into his dwelling-house with his family in June, 1904. In 1907 the appellant having agreed with the owner to surrender his right to block one obtained a deed to blocks two and three. The description of the land as contained in the deed is as follows: "Blocks Nos. two and three (2 & 3) of Garytown Subdivision according to plat of the said subdivision recorded on page twenty-two (22) in Plat Book No. two (2) of the public records of Hillsborough County, Florida."

About a month afterwards the corporate limits of the city of Tampa were extended to include the territory covered by this subdivision. The Tampa Northern Railroad runs along the eastern boundary line of blocks one, two and three, the complainant conveyed to the company a strip of land from the east side of his blocks about twelve feet wide. The railroad track is about four feet higher

than complainant's land. Tenth Avenue is open beyond the railroad to the east about one mile.

In 1907 about the time complainant obtained his deed the owner of Block One sold it to Phillip di Bona and executed a deed therefor. Complainant and Bona agreed upon a dividing line between blocks one and two and a fence was erected upon this line which is about twelve feet north of Tenth Avenue if the same extended across the blocks. The street has never been opened across this land, nor has it ever been used by the public, nor has there ever been, so far as the evidence shows, any formal acceptance by the county commissioners or the municipal authorities of Tampa of the strip of land as a highway or street. Complainant's possession and use of the prop erty since he entered into possession of it in 1904 has been inconsistent with any easement in the public over any part of it as a roadway or street. It does not appear that Bona, the owner of Block One, is insisting upon the opening of Tenth Avenue, nor that the owner of block four desires it.

This record presents several questions which it becomes necessary for us to settle. First, does the mere platting of land by the owner, dividing it into blocks and streets and the sale of blocks according to such plat constitute a complete dedication of the streets indicated to the public use, or does it merely create private rights in the grantees of the original owner which as between them are irrevocable, and as to the public a tender of such lands for streets which must be accepted by the public to be complete as a dedication to public use? If such platting and sale of land is a mere tender to the public of the indicated streets how and when may the acceptance by the public be shown? May there be a revocation of the tender by the

original owner or by his grantees before acceptance by the public?

In the case of Winter v. Payne, 33 Fla. 470, 15 South. Rep. 211, this court held that where the owner of a tract of land makes a town plat of it with spaces for streets laid out thereon, and conveys lots with reference to and bounded by such streets, he thereby dedicates the streets to public use as such, and the *grantees* in the conveyance acquire the right to have said streets kept open for the benefit of light and air, as well as passage ways. That case was followed in Porter v. Carpenter, 39 Fla. 14, 21 South. Rep. 788, in which the court said that such acts constitute a complete dedication. See also Price v. Stratton, 45 Fla. 535, 33 South. Rep. 644; Florida E. C. R. Co. v. Worley, 49 Fla. 297, 38 South. Rep. 618.

In Winter v. Payne, *supra,* the controversy arose between the grantees and their assigns of the original owner Miles Price. It appeared that the street which one of the parties attempted to close or obstruct had been opened to the public and used for many years. The court said the complainant's case rested upon a dedication of the street by Miles Price the owner, and not upon a prescriptive right by user. The facts in the case showed a tender by the owner and acceptance by the public by user. The real question in the case was not whether a street had been dedicated, but where the lines of the street was? In the case of Town of Bartow v. Carpenter, *supra,* the question presented was one of fact as to the existence of a street between Blocks 8 and 17. The controversy was in reality between parties claiming under the original owner who had platted the ground and sold lots according to the plat which showed the existence of the street. The chancellor enjoined Porter from obstructing the street as the same was shown to exist on the plat and

the decree was affirmed. In the opinion the court recognizes the common law principle of tender and acceptance by the public as necessary to constitute a dedication of a street. In Price v. Stratton, *supra*, the controversy was between persons whose predecessors in title claimed under the original owner who had platted the lands and leased and sold lots according to such plat. Stratton brought suit against Price to enjoin him from building a fence on the eastern line of his lot, claiming that such fence would obstruct a lane six feet wide referred to in a lease by L'Engle to Stratton in 1886. Price answered that the line of his lot was the eastern boundary of a street shown on a plat of the land made by L'Engle in 1866 according to which he had sold lots and that Price claimed under one of L'Engle's grantees. Price then filed a cross-bill against Stratton alleging that the latter who occupied the premises described in the lease had built his ice plant into the street fifty-eight feet, thereby almost wholly closing the street on the east side of Price's lot; that L'Engle who had in 1866 platted the land and allowed space for the street and sold lots according to the plat had no right to recall the dedication as to his grantees and their assigns which he had attempted to do in the lease to Stratton by leasing to him part of the street shown on the plat east of Price's lot. There was a demurrer to the cross-bill which was sustained and the cross-bill dismissed "without prejudice to the right of complainants in cross-bill to file an original bill." The order sustaining the demurrer was reversed. This court directed that the original bill be dismissed and the cross-bill be reinstated. Mr· Commissioner GLEN who wrote the opinion, said: "It may be assumed for the purposes of this case (the most favorable assumption for appellee) that until the public in some way *accepts* a dedication thus indi-

cated, the rights of the parties who purchase with reference to a plat are strictly *private* rights," etc.      That case was decided in 1903 up to which time this court had not repudiated the common law doctrine that to constitute a complete dedication of lands to the public for parks, roadways or streets there should be a tender by the owner of the lands for that   purpose and an   acceptance by the public.

In Florida East Coast R. Co. v. Worley, *supra,* the controversy was between parties all of whom held title derived from the deeds referring to a plat making it a part thereof.      It was a plat of the City of Miami before the incorporation of the city which gave rise to the suit. The question arose between the railroad company and Worley *et al.,* who were purchasers of lots facing east on "Biscayne Drive," whether the entire strip of land shown by the plat to lie between "Biscayne Drive" and the Bay of which strip the company claimed to be the owner and in possession was *private* property or whether that portion of the strip marked "Park" on the plat was a *public* park. The company had built its terminals on a portion of the strip marked "Park" and fenced a portion of the strip lying south of the socalled "Park." Prior to 1902 the entire strip of land "except that portion actually occupied by the company for its terminals was vacant property, but it was *used by the* public generally for business, commerce and pleasure in the same manner as other vacant property of similar character."      Some of the residents of the city regarded the entire strip of land as a public park, others regarded it as private property.      The city council adopted a resolution in 1903 "declining   to   accept the dedication of said strip as a park if such dedication was intended by the filing of the Knowlton plat."      The company sought an injunction against the defendants who had

cut the fence and otherwise committed trespasses upon the strip of land from further trespassing upon the property.    On final hearing the chancellor dismissed the bill upon the theory that the _entire_ strip of land between "Biscayne Drive" and the Bay was a public park. Upon appeal this court held that decree to be erroneous.    That decision seems to have settled the one point only, _viz_: that the strip of land which had been fenced and upon which the defendants committed the trespass was not a public park.    So much of the opinion therefore which seems to repudiate the common law doctrine of tender and acceptance as necessary to constitute a dedication of a park or street to the public must be regarded as _obiter dictum._

In the case of McGourin v. Town of DeFuniak Springs, 51 Fla. 502, 41 South. Rep. 541, the complainant owned certain lots south of the railroad and opposite to Eighth Street which was opened to the north side of the railroad. The city undertook to open Eighth Street south of the railroad through complainant's lots, claiming that the former owner of the land had platted the land showing spaces on the plat for streets which included the property which complainant claimed.    That the lots had been sold according to said plat to persons under some of whom complainant claimed, and that said property had been "dedicated to the public uses by the owner _and was accepted and used by the public long before_ and at the time it was assumed to give the complainant and his grantor an interest therein other than that of the general publc." Testimony was taken and on final hearing the chancellor dissolved the injunction which had been granted against the city restraining it from interfering with the complainant's property, and ordered a dismissal of the bill. This decree was reversed by this court which held that the burden of proof was upon the city to show that the

"*locus in quo* was dedicated to the use of the public and *accepted and used* as *such* by the *public*" and that such burden had not been met by the city.    That the *locus in quo* was never prior to 1902 used as a street or highway; that a fence was built around a large tract including the *locus in quo* and a building erected on it in 1884, and the fence prevented the use of the land as a street and that it did not appear from the plat that the *locus in quo* was in any of the spaces indicated on the plat as streets.    That there was no testimony that the land had been accepted by the public as a street nor that it had been used as such prior to 1902.    The court said that if purchasers of lots have rights under the conditions under which they bought they would not be affected by the suit. It appears from the opinion in that case that the court thought that the platting of land by the owner and the sale of lots according to the plat merely evinced an *intention* to dedicate the streets shown thereon to public use as streets and cited Price v. Stratton, *supra,* and Florida E. C. R. Co. v. Worley, *supra,* in support of the doctrine.

In Raymond v. Whitcomb, 66 Fla. 19, 62 South. Rep. 832, a distinction was made between a dedication of a strip of land, as a street, to the public use and a private easement of egress and ingress over the strip or space in controversy.

In the case of City of Gainesville v. Thomas, 61 Fla. 538, 64 South. Rep. 780, the court treated the making of a plat of land showing spaces for streets and the placing . of the plat on record and sale of lots according to the same as a proffer to the public of the spaces designated as streets for use as such, to be accepted at the convenience of the public.    The opinion contains a suggestion that the offer may be revoked, but a general allegation of adverse holding was not deemed sufficient to show

an "ouster or interference with the public easement." It is not clear whether the court intended by this language to convey the idea that after the public accepts an offer of dedication of streets or roadways it can be ousted of the easement and the statute of limitations would then begin to run in favor of the person in possession, or that the doctrine of equitable estoppel could be invoked under some circumstances or whether an "interference with the public easement" might in some circumstances be regarded as a revocation of the offer of dedication. The point however was not in that case necessary to be determined as it did not appear from the allegations of the bill of complaint that the complainant had actually taken possession of the so-called streets and closed them against public use.

There is no decision by this court to which our attention has been called which holds to any view inconsistent with the rule at common law upon the subject of the dedication of streets and highways by private persons which requires acceptance by the public to make the dedication complete. See 3 Dillon's Municipal Corporations, 1723; 8 R. C. L. 898; 4 McQuillin's Municipal Corporations, 3266. While in some jurisdictions it is held that the mere sale of lots with reference to a plat made by the owner of the land which plat shows on its face certain spaces marked as streets constitutes a complete dedication of such spaces for streets so that there need be no acceptance of it by the public that rule has not been adopted in this state. We think it is more consistent with reason and more in harmony with the weight of authority in this country to hold that the platting of land and the sale of lots pursuant thereto creates as between the grantor and the purchaser a private right to have the space marked upon the plat as streets, alleys, parks,

etc. remain open for ingress and egress and the uses indi-
cated by the designations, but that so far as the public
is concerned such acts amount to a mere offer of dedica-
tion which must be accepted before there is a revocation
to complete the dedication.    See Hewes v. Village of
Crete, 175 Ill. 348, 51 N. E. Rep. 696; Hamilton v.
Chicago, B. & Q. R. Co., 124 Ill. 235, 15 N. E. Rep. 854;
Russell v. Chicago & M. Electric R. Co., 205 Ill. 155, 68 N.
E. Rep. 727; Stacy v. Glen Ellyn Hotel & Springs Co.223
Ill. 546, 79 N. E. Rep. 133; Scott v. Donora Southern R.
Co. 222 Pa. 634; 72 Atl. Rep. 282; State ex rel. v. Humil-
ton, 109, Tenn. 276, 70 S. W. Rep. 619; Smith v. Beloit,
122 Wis. 396, 100 N. W. Rep. 877; Anaheim v. Langenber-
ger, 134 Cal. 608, 66 Pac. Rep. 855; Trammel v. Bradford,
Ala. 73 South. Rep. 894; Bintin v. City of Danville, 93
Va. 200, 24 S. E. Rep. 838; Carter v. Barkley, 137 Iowa
510, 115 N. W. Rep. 21; Chapman v. City of Sault Ste.
Marie, 146 Mich. 23, 109 N. W. Rep. 53; Baker v. Squire,
143 Mo. 92, 44 S. W. Rep. 792; Arnold v. City of Orange,
73 N. J. Eq. 280, 66 Atl. Rep. 1052; Healey v. Atlanta, 125
Ga. 736, 54 S. E. Rep. 749; Atlantic & S. R. Co. v. State
Botrd of Assessors of New Jersey, 80 N. J. L. 83, 77 Atl.
Rep. 609; Riley v. Buchanan, 116 Ky. 625, 76 S. W. Rep.
527.

In Village of Augusta v. Tyner, 197 Ill. 242, 64 N. E.
Rep. 378, it was held that a municipality cannot enforce
the private right of lot owners  to  have streets remain
open where the municipality has not accepted the offer of
dedication.

In City of Buffalo v. Delaware, L. & W. R. Co., 190 N.
Y. 84, 82 N. E. Rep. 513,  the court said  that the pro-
posed dedication may  be withdrawn  any  time before
acceptance by the public.    In Stacy v. Glen Ellyn Hotel
& Springs Co., supra, the court said: to constitute a dedi-

cation at common law there must be an intention on the part of the proprietor of the land to dedicate the same to public use; there must be an acceptance by the public and the proof of these facts must be clear, satisfactory and unequivocal.    In the case of Russell v. Chicago & M. Electric R. Co., *supra*, it was held that the extension of the city's limits by taking in territory that had been platted was not an acceptance of the streets and alleys as shown on the plat.

As to the time when the public must accept a tender of dedication the authorities seem to be in harmony, holding that acceptance may be made within a reasonable time, but before withdrawal of the offer, as the convenience of the public or those who live upon adjacent lots require. In Illinois and Michigan acceptance delayed for fifty years was held to be too late.    City of Venice v. Madison County Ferry Co., 216 Ill. 345, 75 N. E. Rep. 105; Cass Co. Sup'rs. v. Banks, 44 Mich. 467, 7 N. W. Rep. 49.    In North Carolina acceptance of streets twelve years after offer of dedication was held effectual.    Bailliere v. Atlantic Shingle Cooperage & Veneer Co., 150 N· C. 627, 64 S. E. Rep. 754.    In Darling v. Jersey City, 73 N. J. Eq. 318, 67 Atl. Rep. 709, it was held that the burden of proving acceptance of an offer to dedicate is on the municipality alleging it.

In the case at bar  there is no  contention  that the county of Hillsborough ever through its officers formally accepted the offer of dedication of the *locus in quo,* nor that there was any acceptance  by user.    The  evidence shows that the place was never open to the public, never used by the public for a passage way, was inclosed by a fence and under cultivation by the owner when the limits of the city of Tampa were extended to take in the territory covered by the plat.    The  only two  persons who

may be said to have had the right to keep the street open as shown on the plat appear from the evidence to have agreed among themselves to a division line between blocks one and two and to the closing of the way or passage. The owner of block numbered 4 has ingress and egress to and from his lot through Avenues Seven and Eight and according to the plat no other way to reach his land, so that the *locus in quo* appears to hold no interest for him. Jones on Easements, Sec. 346; State *ex rel.* v. Hamilton, *supra*.

Although the blocks numbered one and two seem to be divided by the open space which is the land in controversy here, title to the center of such strip of land passed to the purchasers of the two blocks each respectively on his side of the proposed street. See Smith v. Horn, 70 Fla. 484, 70 South. Rep. 435.

Having acquired the property before the public had accepted the offer of dedication, and assuming without deciding that the two purchasers could have revoked the offer of dedication as made by their grantor as effectually as he could have done so, the case turns upon the question as to whether Kirkland and DeBona revoked the offer of dedication as made by their grantor there being no contention that he attempted to revoke the offer. The burden of proof was upon the complainant. The evidence should have clearly established not only an intention upon the part of Kirkland, but also upon DeBona's part to revoke the offer of dedication. Kirkland alone could not revoke the offer, he was not the sole grantee.

The chancellor found the facts to be against the contention of the complainant that there had been a revocation of the offer of dedication. We are unable to say that the evidence as disclosed by the record shows clearly that conclusion to be wrong, hence the decision of the Chancellor

will not be disturbed.    See Dean v. Dean, 36 Fla. 492, 18 South. Rep. 592; Lucas v. Wade, 43 Fla. 419, 31 South. Rep. 231; City of Jacksonville v. Huff, 39 Fla. 8, 21 South. Rep. 774; West v. Daniels, 57 Fla. 548, 49 South. Rep. 154; Davis v. Horne, 57 Fla. 396, 49 South. Rep. 505; Kelly Co. v. Pollock & Bernheimer, 57 Fla. 459, 49 South. Rep. 934; Johns v· Bowden, 72 Fla. 530, 73 South. Rep. 603.

The propriety of the decree  in this  case rests solely upon the fact as disclosed by the proofs that there had been no revocation clearly and definitely shown on the part of both Kirkland and DeBona of the offer to dedicate the strip of land to public use for a street.    So far as Kirkland's acts were concerned they may have been sufficient to show an intention on his part to revoke the offer, but as we have shown DeBona has the right to insist upon the passageway and although that is a private right which the city may not enforce in its name, yet until that right is waived by some act on his part clearly showing an abandonment of it and an intention to shut the public off from an acceptance of the offer to dedicate the strip of land, the public may within a reasonable time accept the offer and open the passageway.

The city of Tampa acting for the public announced its intention to open the street; that was an acceptance, and as it was made within a reasonable time, and before revocation of the offer ,the complainant's case failed.

The decree is affirmed.

BROWN, C. J. AND TAYLOR, WHITFIELD AND WEST, J. J., concur.