SANDLER, HARRY N., Associate Judge.
Complaint for trespass was filed by the City of Hollywood, appellee herein, against Ellsworth Weber, appellant, claiming damages resulting from the digging of a ditch by Weber upon.an alleged street right-of-way. Defendant counterclaimed for trespass claiming title to the alleged street right-of-way and damages resulting from the city filling in said ditch. Upon respective motions the lower court entered summary judgment against the City of Hollywood upon its complaint and against defendant Weber on the counterclaim.
The defendant, Weber, appealed so the question to be determined is whether or not summary judgment should have been entered against him by the lower court on his counterclaim. The facts presented by supporting affidavits and interrogatories are undisputed and are briefly as follows:
The defendant Weber is the owner of certain property in a recorded subdivision containing five blocks — Blocks 1 through 4 running north to south with the fifth block to the west of Block 3. Various streets separate the blocks. The street in question runs from north to south along the western side of the first four blocks and the eastern side of the fifth block. Defendant Weber owned Blocks 1 and 2 and the east half of Blocks 3 and 4. At the time of the recording of the plat an offer of dedication was made therein as to said streets but said offer was not accepted by the public officials at the time of said recording.
The defendant Weber claimed title to the street right-of-way by virtue of the dedica *828 tion being revoked prior to acceptance. The city claimed title by virtue of its alleged acceptance of the offer to dedicate the streets. The defendant’s claim is based upon a. deed by defendant’s predecessor in title conveying all of the blocks in said subdivision including grantor’s interest “in and to all streets, avenues and boulevards adjacent to said blocks”, together with affidavits by parties to the transaction that the purpose of the quoted phrase was to revoke the offer of dedication. Revocation is also claimed based on the use of the property by defendant Weber for farming purposes and upon a letter by Weber to the city asserting revocation of the offer of dedication as to the street abutting his property. There was no evidence presented as to whether any of the other streets or portions thereof in the subdivision had been accepted by the city prior to this controversy by use or formal acceptance. The city relied upon its claim of acceptance by resolution adopted subsequent to the letter above mentioned and also by taking possession and the filling of the ditch in the right-of-way.
It further appears from the record that the lands covered by the plat were not included within the boundaries of the city at the time of its recordation in 1927, but were taken in by act of the legislature in 1955, Sp.Acts 1955, c. 30836, ch. 3, § 14.
Summary judgment is proper when, from the admitted facts, there is no basis for any legal claim. This Court is of the opinion that the court below was correct in entering summary judgment. It is settled law in Florida that the recording of a plat is merely an offer to dedicate the street thereon to public purposes and that until accepted such offer may be revoked. However, the alleged attempted revocation by a transfer of all of the property in the subdivision including the streets does not in and of itself amount to revocation unless the intent to do so is clearly expressed therein so that the public officials would be put on notice of the withdrawal of the offer of dedication. City of Miami v. Florida East Coast Railway Co., 79 Fla. 539, 84 So. 726; Kirkland v. City of Tampa, 75 Fla. 271, 78 So. 17; 26 C.J.S. Dedication § 60, p. 548.
The final question involved is-whether or not the owner in this case can revoke the offer of dedication as to streets-abutting his property prior to acceptance by the proper public authority without the consent of private owners having an interest in other lots or blocks in said subdivision. The lower court answered this: question in the negative and we believe the authorities support this holding.
After an independent research we find! a dearth of authorities in Florida on this precise point. However, the early case of Florida East Coast Railway v. Worley, 49 Fla. 297, 38 So. 618, 622, sets the trend of the Florida courts to follow the general weight of authority on this question. In determining the rights of private parties holding deeds to lots in a subdivision to prevent the closing of a park offered for dedication in a recorded plat the Court stated:
“Here the parties have made their deeds and spread them upon the records-of the county for the inspection of the-public, whereby they have made certain dedications, the object and effect of which was to invite purchasers and', improvements, and to enhance the value of the residue of the town property. In that way they expected to be remunerated for the dedications thus made, and every man who purchased a lot of them, or made improvements there, paid a proportion of the consideration for the property donated to the public.”
In cases ■ of this type there are three-rights involved:
1. The right of the dedicator or his-successor to revoke the offer of dedication -prior to acceptance.
2. The right of the proper public authorities to accept an offer of. dedication: in behalf of the general public.
*829 3. The private right of purchasers of property in a subdivision to the use of the streets and parks as laid out in the plat.
As to the rights of a purchaser in a platted subdivision to keep open streets- as shown on the plat, it appears that our courts have adopted the so-called intermediate view. In Powers v. Scobie, Fla.1952, 60 So.2d 738, 740, it is stated:
“It is our view that the ‘intermediate’ view, referred to either as the ‘beneficial’ or as the ‘complete enjoyment’ rule, by the annotator in 7 A.L.R.2d at page 633, should be adopted in this jurisdiction. This rule is ‘that the extent of the grantee’s private right of user in streets and alleys shown on a map or plat by reference to which his conveyance was made is limited to such streets and alleys as are reasonably and materially beneficial to the grantee and of which the deprivation would reduce the value of his lot.” 7 A.L.R.2d, § 7, page 633.”
Some authorities appear to make a distinction between the rights of a dedicator or his successor to revoke an offer of dedication insofar as the general public is concerned prior to acceptance by proper authority and such right to revoke as against purchasers of lots in said subdivision. Except in such cases where there may be some element of estoppel, adverse possession or other similar ground raised, it would appear that there is such a blending of public right resulting from an offer of dedication with private rights growing out of implied covenant, implied grant, or estoppel of the dedicator, that in either instance the dedicator or his successor can not legally revoke an offer of dedication as against the public or owners in such subdivision as to any of the platted public streets without the consent of any such owner affected. Of course, this rule excludes the closing of public streets as authorized by statute. See 10 Fla.Jur. 27, 16 Am.Jur., Dedication, sec. 29; Ann.Cas. 1917A, 1122, and 26 C.J.S. Dedication §§ 58, 65. The latter authority points out that the grantee of any such lots has the right to insist that such offer of dedication be held open for acceptance by the proper public authority and that such offer can not be revoked without such party’s consent.
In Kirkland v. City of Tampa, supra, the city attempted to open up a platted street under circumstances similar to the case at bar. The street in question ran between, only two of the four blocks in a platted subdivision. The owner of the block on one side of the street resisted the city’s efforts. The court found that all other property owners of the subdivision, excluding the owners of the blocks abutting the street, could not reach their property through the street in question and therefore had no interest therein. It held, in denying the owner relief, that “assuming, without deciding,, that the two purchasers could have revoked the offer of dedication”, [75 Fla. 271, 78 So. 21] the burden of proof was upon the owner resisting the city’s efforts to clearly establish the revocation of the offer of dedication by both owners of the blocks abutting the street in controversy. The Court, in speaking of the rights of the other owners, stated:
“although that is a private right which the city may not enforce in its name, yet until that right is waived by some act on his part clearly showing an abandonment of it and an intention to-shut the public off from an acceptance of the offer to dedicate the strip of land, the public may, within a reasonable time, accept the offer and open the passageway.”
Appellant cited the case of City of Miami v. Florida East Coast Railway, supra, as authority to the contrary. A careful reading of this case reveals that the court was greatly influenced and apparently based its final decision on the principle that public authorities may be estopped by their action to question the revocation of an offer of dedication. That case was concerned with the rights of the railroad to the use of a strip of land across a dedicated park on *830 which was located its railroad track. It •appeared that the city had approved such use by ordinance and by its acquiescence and the apparent acquiescence of the public in the actual occupancy by the grantee under “the special circumstances shown in this case” operated as a revocation.
Affirmed.
ALLEN, C. J., and SHANNON, J., concur.